Maryann Labell CABLE, Plaintiff,

v.

The NEW YORK STATE THRUWAY AUTHORITY, Defendants.

No. 97–CV–1327.

United States District Court, N.D. New York.

May 18, 1998.

Law Office of Karen L. Kimball, Wynants-kill, NY (Karen L. Kimball, of counsel), for Plaintiff,

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (Howard L. Zwickel, Asst. Attorney General, of counsel), for Defendant.

## MEMORANDUM, DECISION & ORDER

MCAVOY, Chief Judge.

Defendant in this discrimination action brought under federal and state law moves for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).

## I. Background

### A. Facts

**Plaintiff Maryann Labelle Cable** began working for **defendant New York State Thruway Authority ("defendant" or "the Thruway Authority")** in February of 1987 as a part-time cleaner. In 1989, she worked in Amsterdam, New York on a maintenance crew as the only woman on a crew of 27 workers. The crew was supervised by Timothy Gilbert. Gilbert openly disapproved of having a woman on the crew and made disparaging remarks about women in general and plaintiff in particular. Plaintiff did not complain to the Thruway Authority at this time, because she was afraid she would lose her job.

At an unspecified date, plaintiff was transferred to the Albany Division Highway of the Thruway Authority ("Division Highway") and became a full time Construction Equipment Operator Light. She then worked in the Division Highway without major discriminatory incidents for a period of time.

This unspecified period without major incident seems to have lasted into 1994. In March of 1994, plaintiff suffered a back injury while on the job and was out of work until November of 1994. While plaintiff was out of work, Gilbert again became her direct supervisor, having transferred to Albany in June of 1994. Once he arrived, and while plaintiff was still out of work, Gilbert refused

to prepare certain paperwork to assist plaintiff in maintaining disability benefits. This was paperwork plaintiff's previous supervisor had done, and paperwork Gilbert did for male crew members.

When she returned to work in November of 1994, plaintiff was not given the opportunity to perform "light duty" assignments, even though other employees were given such assignments. Plaintiff concedes, however that she did not request a light duty position. Plaintiff also faced, upon her return to work, more disparaging remarks from Gilbert based upon her sex and disability. Gilbert also refused to provide plaintiff with the same benefits he gave to male members of the crew. When plaintiff sought a transfer, Gilbert refused the request.

Plaintiff concedes that she still did not complain to directly to the Thruway Authority, primarily because Ellen Rogers, the person she was to contact, was used by Gilbert as his personal secretary. Rogers was uncooperative and obstructive during plaintiff's attempts to resolve her problems with Gilbert, as were other individuals in the Thruway Department's personnel office. Her union also was unresponsive to her complaints throughout this period.

In June of 1996, over the objection of her union, plaintiff filed a formal grievance of sex discrimination with the Thruway Authority against Gilbert. The Thruway Authority, through the personnel office, conducted an "in-house" investigation. In July of 1996, the Thruway Authority made a finding that plaintiff had not suffered sex discrimination. During the investigation, Gilbert discussed the matter with other employees and members of the personnel office and intimidated employees under his supervision. Though the Thruway Authority found no discrimination, it did determine that Gilbert's behavior was unprofessional and ordered him to apologize to plaintiff. The apology never came. In the meantime, Gilbert's behavior worsened.

Upon the advice of her doctors, plaintiff requested, in the spring and early summer of 1996, a "reasonable accommodation" that she be allowed to refrain from repetitive lifting of objects over forty pounds. Her job did not require such lifting, but plaintiff's doctors told her that her back would heal faster with such a restriction. When she formally made the request on July 16, 1996, she was told by the Thruway Authority to have the restriction lifted or to go home. She was sent home that day. Thereafter, the Thruway Authority controverted plaintiff's Workers' Compensation claims, did not allow her to receive disability payments and investigated her time records.

In September of 1996, plaintiff advised the Thruway Authority she was ready, willing and able to work. Nonetheless, she was passed over for openings at other positions in Syracuse and Albany, and was forced to submit to multiple medical examinations. She eventually was allowed to return to work on November 12, 1996 and was not required to perform lifting over forty pounds.

Gilbert's discriminatory conduct continued and worsened, however, and plaintiff began to be ostracized by her co-workers. She complained to the Thruway Authority and the Union to no avail. Moreover, the Thruway Authority took certain adverse actions against her with respect to her accrued benefits and time. In December of 1996, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") She was then further ostracized and criticized.

In January of 1997, plaintiff was ordered to undergo additional doctors' examinations and was found to be unfit for work. In March of 1997, she requested a leave of absence to escape what she felt was a hostile work environment. She has requested that the Thruway Authority investigate her allegations of discrimination and retaliation, but no action has been taken; plaintiff remains out of work.

**B. Procedural History**

Plaintiff filed her EEOC charge on December 20, 1996. The New York State Division of Human Rights ("DHR") received the charge on the same date based on a deferral from the EEOC. Plaintiff received right-to-sue letters on June 12, 1997. She filed the present Complaint on September 11, 1997,

but did not serve it. She filed and served an Amended Complaint on October 27, 1997.

The Amended Complaint contains eight claims: (1) sex discrimination under the New York Human Rights Law ("HRL") Executive Law § 290, *et seq.;* (2) retaliation with respect to sex discrimination under the HRL; (3) sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.;* (4) retaliation with respect to sex discrimination under Title VII; (5) disability discrimination under the HRL; (6) retaliation with respect to disability discrimination under the HRL; (7) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.;* and (8) retaliation with respect to disability discrimination under the ADA.

The Thruway Authority now moves for judgment on the pleadings on several grounds. The Thruway Authority argues: (1) plaintiff's allegations of discriminatory conduct prior to February 24, 1996 are time-barred as to her federal claims, and those arising before December 20, 1993 are time-barred as to her HRL claims; (2) the Court is without jurisdiction to hear those allegations in the Amended Complaint that plaintiff failed to include in her EEOC charge; and (3) plaintiff is not entitled to punitive damages under Title VII, the ADA or the HRL.

## II. Discussion

### A. Standard for Judgment on the Pleadings

■ Defendant moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), 12(b)(1) and 12(b)(6), based upon lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Where a motion for judgment on the pleadings is based on the defense of failure to state a claim upon which relief may be granted, *see* Fed.R.Civ.P. 12(h)(2), the Court will treat the motion as one to dismiss. *See (National Association of Pharmaceutical Manufacturers, Inc., v. Ayerst Laboratories, Inc.,* 850 F.2d 904, 909 n. 2 (2d Cir.1988)).

■ "When deciding a motion to dismiss an action for failure to state a claim upon which relief may be granted, the court 'must accept the material facts alleged in the complaint as true.' " *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994)). The court should not dismiss on a Rule 12(b)(6) motion unless it appears clear that the plaintiff cannot in any way establish a set of facts to sustain her claims which would permit relief. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir. 1986). Though the factual inquiry generally is restricted to the allegations in the Amended Complaint, the Court can and will consider, as part of the pleadings, plaintiff's administrative charge. *See Jadoo v. City of New York,* 1997 WL 614508, at *2 (E.D.N.Y.); *Greene v. Term City, Inc.,* 828 F.Supp. 584, 587 n. 1 (N.D.Ill.1993).

It is in light of these considerations that plaintiff's Amended Complaint is examined.

### B. Defendant's Arguments

#### 1. Timeliness

Defendant first argues that plaintiff's Title VII and ADA claims are time-barred as to incidents that occurred prior to February 24, 1996.

> Title VII provides, in pertinent part, that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency . . ., [a charge under this section] shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . .

42 U.S.C. § 2000e–5(e)(1) (1994). The ADA adopts this limitations period. *See* 42 U.S.C. § 12117(a). The statutory time period provided is analogous to a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The parties agree that the 300–day limitation period applies to the present case.

■ The limitations period commences on the date of the discriminatory act. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Because the 300 day period operates as a limitations

period, only those acts of discrimination or retaliation occurring within the 300 days prior to plaintiff's December 20, 1996 filing with the EEOC (dating back to February 24, 1996) will be timely.

▬ Plaintiff argues that her timely allegations of discrimination and retaliation can be linked with the time-barred allegations as a single occurrence under the continuing violation exception to the statute of limitations. This exception provides that where evidence of an ongoing discriminatory policy or practice is present, the Court may consider all of an employer's actions allegedly taken pursuant to such policy, even if some are time-barred. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996). A continuing violation may be found if the proof shows a specific and ongoing policy or practice of discrimination, or if an employer allows specific, related instances of discrimination to continue unremedied such that those instances amount to a discriminatory practice or policy. *Van Zant*, 80 F.3d at 713; *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). However, "the continuing violation doctrine is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances." *Lloyd v. WABC–TV*, 879 F.Supp. 394, 399 (S.D.N.Y.1995).

### a. Pre–1994 allegations

▬ Plaintiff alleges in her Amended Complaint that the discrimination began in 1989 when she was working on a maintenance crew that Gilbert supervised in Amsterdam, New York. The discrimination consisted of Gilbert making disparaging remarks about women and general and plaintiff in particular. She then states that she was transferred to Albany, but she does not say when. She does, however, concede that once she was transferred to Albany, she worked without major discriminatory incidents "for a period of time."

▬ The next period of discriminatory activity began after plaintiff suffered a back injury in March of 1994. Gilbert was then transferred to Albany in June of 1994, and began discriminating against plaintiff while she was on disability for the back injury. Plaintiff does not allege that any of this discrimination occurred pursuant to any policy or practice of defendant; "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

Moreover, plaintiff fails to allege that defendant allowed the discrimination between 1989 and 1994 to continue unremedied, such that it would amount to a discriminatory policy or mechanism; she in fact concedes that she did not complain to defendant of Gilbert's behavior as to these incidents. In short, the allegations of discrimination that occurred between 1989 and 1994 "do not reflect a 'dogged' pattern of disparate treatment that persisted unremedied, despite [plaintiff's] complaints, over a number of years." *Valenti v. Carten Controls, Inc.*, 1997 WL 766854, at *5 (D.Conn.) (quoting *Nicholas v. Nynex, Inc.*, 974 F.Supp. 261, 1997 WL 447180, at *5 (S.D.N.Y.)).

Accordingly, none of plaintiff's pre–1994 allegations are part of a continuing violation and are dismissed as time-barred.

### b. June 1994–February 1996

As to plaintiff's allegations of discrimination and retaliation beginning in 1994, the Court first notes that these allegations are timely as to plaintiff's claims under the New York Human Rights Law, which has a limitations period of three years. *See Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Thus, the Court's discussion of the timeliness of plaintiff's allegations from 1994 onward relates only to her federal claims.

▬ As to this time period, plaintiff also fails to allege that any discrimination that occurred was pursuant to any discriminatory policy or mechanism of the Thruway Authority. Moreover, plaintiff's allegations as to this time period fail to show that the Thruway Authority allowed specific, related instances of discrimination to continue unremedied such that those instances amount to a discriminatory practice or policy. *Van Zant,*

80 F.3d at 713. Plaintiff merely alleges that Gilbert took certain actions against her beginning in 1994; she does not specify when he took those actions or how often. Moreover, plaintiff once again concedes that she did not complain directly to the Thruway Authority about Gilbert's conduct; she includes only a vague allegation that some Thruway Authority employees were uncooperative and obstructive during her attempts to resolve her difficulties with Gilbert. These allegations also fail to rise to the level of a continuing violation, and are accordingly dismissed as time-barred.

In sum, the Court concludes that plaintiff's Title VII and ADA claims will be limited to those allegations occurring within 300 days prior to December 20, 1996. Her federal claims are dismissed as to any incidents alleged to have occurred outside this time period.

**2.  The EEOC charge.**

Defendant next argues that the Court is without jurisdiction to hear plaintiff's Title VII and ADA claims to the extent those claims involve allegations in the Amended Complaint that were not included in her EEOC charge. Plaintiff responds that the Court has jurisdiction because the allegations of discrimination not included in the EEOC charge are "reasonbly related" thereto.

■■■ Title VII and the ADA's administrative exhaustion requirement mandates that district courts have "jurisdiction to hear [discrimination] claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993). Claims are "reasonably related" where (1) they would fall within the scope of the EEOC investigation which reasonably could be expected to arise from the original charge of discrimination; or (2) the later claim alleges that the employer is retaliating against plaintiff for filing the original EEOC charge; or (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts,* 990 F.2d at 1402–03.

Defendant first argues that the "reasonably related" exception applies only to conduct that occurred *subsequent* to the filing of the EEOC charge, and that many of plaintiff's "unincluded" allegations pre-date the filing of the charge. Though the Second Circuit's language in *Butts* seems to suggest such an application, *see Butts,* 990 F.2d at 1401 ("A district court only has jurisdiction to hear claims that ... are based on conduct *subsequent* to the EEOC charge which is reasonably related to that alleged in the EEOC charge") (emphasis added), this Court noted in *McNight v. Dormitory Authority of State of New York,* 995 F.Supp. 70 (N.D.N.Y. 1998) (McAvoy, C.J.), that *Butts* itself analyzed pre-filing conduct under the reasonably related test. *See McKnight* at 82 n. 3 (citing *Butts,* 990 F.2d at 1403). Moreover, as Judge Scullin recently noted in *Fusco v. Cohen,* 1998 WL 167299 (N.D.N.Y.), the case *Butts* relied on in formulating the "reasonably related" exception never held that the exception was limited to post-filing conduct. *See Fusco* at *1 (discussing *Stewart v. INS,* 762 F.2d 193, 198 (2d Cir.1985)). This Court will, therefore, analyze the pre– and post-filing allegations to see if they are "reasonably related" to the conduct alleged in the EEOC charge.

■■■ Defendant contends plaintiff has failed to exhaust her administrative remedies with respect to the following timely allegations of discrimination in her Amended Complaint that were not included in her EEOC charge: (1) Gilbert's alleged retaliatory acts of hindering plaintiff's receipt of work boots, refusing her "out of title" training and making it difficult for plaintiff to use accrued time off; (2) the alleged conduct by Gilbert's secretary and other Thruway Authority employees to obstruct plaintiff's efforts to resolve her difficulties with Gilbert; (3) the allegations with respect to other employment opportunities that plaintiff was denied in October 1996; (4) plaintiff's allegations that she was forced to take multiple medical examinations before she could return to work in November 1996; (5) the purported scrutiny of plaintiff's time and attendance records upon her return to work in November 1996; (6) the alleged refusal, after plaintiff re-

turned to work in November 1996, to allow plaintiff to work again, which decision was later withdrawn; and (7) plaintiff's allegation that she was ordered to undergo additional medical examinations after the filing of her EEOC charge.

The EEOC charge in fact makes reference to none of these incidents. Plaintiff seems to argue that her general allegations of discrimination and retaliation in the EEOC charge suffice to render these specific instances in the Amended Complaint "reasonably related." The allegations in plaintiff's EEOC charge are generally that plaintiff was discriminated against based upon her sex and back injury. The only specific allegations she includes therein relate to light duty restrictions, lack of confidentiality in the Thruway Authority's investigation of plaintiff's in-house complaint, and plaintiff not being allowed to work until she had the light-duty restriction lifted. She also includes an allegation that her benefits were cut and her seniority questioned.

As the Court previously noted, claims will be deemed reasonably related where they would fall within the scope of the EEOC investigation which reasonably could be expected to arise from the original charge of discrimination. *Butts* at 1401. The EEOC, however, "cannot be expected to investigate mere generalizations of misconduct, nor can defendants adequately respond to them." *Choi v. Chemical Bank,* 939 F.Supp. 304, 313 (S.D.N.Y.1996). Nor is plaintiff's "vague, general charge of discriminatory conduct raised before the EEOC ... sufficient to trigger agency investigation of specific instances of discrimination alleged in the complaint." Plaintiff cannot premise jurisdiction of the numerous specific instance of discrimination in the Amended Complaint on the generalized claims of discrimination and re-

taliation in her charge. In other words, this Court is without jurisdiction to hear the allegations in plaintiff's Amended Complaint that were not included in her EEOC charge. *See Butts* at 1401.[1]

■ The Court will, however, retain jurisdiction over one of the unincluded allegations: namely, that plaintiff was forced to undergo additional medical examinations after filing her EEOC charge. Construing the Amended Complaint in plaintiff's favor, such an allegation can be viewed as having been taken in retaliation for the filing of the EEOC charge. Such a claim is reasonably related to the EEOC charge. *See Butts* at 1402–03. Defendant's contention that it did not receive notice of the EEOC charge until after the examinations allegedly took place raises a factual issue that cannot be resolved on the present motion.

In sum, with the exception of plaintiff's allegation of the retaliatory medical examinations ordered after her EEOC filing, the Court is without jurisdiction to consider the allegations in plaintiff's Amended Complaint that were not included in her EEOC charge. Those allegations are therefore dismissed.

■ The same allegations will be dismissed insofar as they are brought under the HRL. "[A]llowing the state law claims to continue in federal court would enable plaintiff to circumvent the statutory administrative exhaustion requirements." *Spurlock v. NYNEX,* 949 F.Supp. 1022, 1035 (S.D.N.Y. 1996). Accordingly, plaintiff's HRL claims survive only to the extent of her surviving federal claims. *Id.*

## 3. Punitive Damages

Finally, defendant argues plaintiff is not entitled to punitive damages under Title VII, the ADA or the HRL and that her request

---

1. At oral argument, plaintiff's counsel insisted that the numerous and specific allegations of discrimination in the Amended Complaint were in fact raised and addressed at a hearing before the EEOC, and thus actually fell within the scope of the EEOC investigation. There is authority for the proposition that "the scope of the actual investigation conducted is strongly suggestive of what could reasonably be expected to grow out of the administrative charge." *Sidor v. Reno,* 1997 WL 582846, at *10 (S.D.N.Y.); *see Paige v.*

*California,* 102 F.3d 1035, 1041 (9th Cir.1996) ("The district court here had jurisdiction over the plaintiffs' claim of class discrimination in promotion if that claim fell within the scope of the EEOC's actual investigation or an EEOC investigation which could reasonably be expected to grow out of the charge of discrimination.") (citation and internal quotations omitted). Other than her counsel's naked assertion, however, plaintiff presents no proof of the scope of the actual investigation.

for such damages must be dismissed. Plaintiff concedes that punitive damages are unavailable under the HRL; the only question remaining is whether such damages are available against this defendant under Title VII and the ADA.

Because plaintiff's timely allegations occurred well after 1991, she may seek those damages authorized by the Civil Rights Act of 1991, including compensatory and punitive damages. *See* 42 U.S.C. § 1981a(a) (1988 ed., Supp. IV). Punitive damages are not available, however, against "a government, government agency or political subdivision ...". 42 U.S.C. § 1981a(b)(1). The remedial provisions of the Civil Rights Act, which amended Title VII, apply to the ADA as well. *See* 42 U.S.C. § 12117(a); *Luciano v. Olsten Corp.*, 110 F.3d 210, 220 (2d Cir.1997).

No court has determined, as a matter of law, that the Thruway Authority is a government agency against whom punitive damages cannot be assessed under Title VII or the ADA. Moreover, because the inquiry is, at least in part, dependent upon factual matters outside the scope of the pleadings, *see Ettinger v. SUNY College of Optometry*, 1998 WL 91089 (S.D.N.Y.) (examining state legislation that created SUNY), the Court will deny defendant's motion at this time with leave to raise the question on summary judgment.

## C. Plaintiff's Request for Leave to Amend

Plaintiff requests that, should the Court grant any part of defendant's motion, she be granted leave to amend the Complaint. Under Local Rule 15.1(a), a party who moves for leave to amend a pleading must attach to the motion an unsigned copy of the proposed amended pleading. The party also is required to set forth specifically the amendments proposed to be made to the original pleading. Local Rule 15.1(b). Plaintiff has done neither, and the Court thus has no basis upon which to determine whether such leave should be granted. Her request is therefore denied.

## III. Conclusion

In sum, defendant's motion for judgment on the pleadings is GRANTED in the follow respects:

—dismissing plaintiff's federal claims as to incidents occurring prior to February 23, 1996;

—dismissing plaintiff's HRL claims as to incidents occurring prior to December 20, 1993;

—dismissing plaintiff's federal and state law claims as to the allegations not asserted in the EEOC charge, with the exception of plaintiff's allegation that she was forced to undergo additional medical examinations after the filing of the charge.

The motion to dismiss plaintiff's request for punitive damages is denied as to the federal claims, and granted as to the HRL claims. Plaintiff's request for leave to amend the Complaint is denied.

**IT IS SO ORDERED.**