**Cecelia BRIGGS, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF TRANSPORTATION, State of New York, Mark Bonacci, individually and as an employee of the New York State Department of Transportation, Joseph Camastra, individually and as a sign supervisor for the New York State Department of Transportation, John Collins, individually and as the** site supervisor for the New York State Department of Transportation and Charles Lamendola, Individually and as administrator officer of the New York State Department of Transportation, Defendants.

No. 01–CV–1800.

United States District Court, N.D. New York.

Nov. 12, 2002.

Murad & Murad, Attorneys for Plaintiff, Utica, Frederick W. Murad, Esq.

Hon. Eliot Spitzer, Attorney General of the State of New York, Attorney for Defendants, Department of Law, Albany, Sean D. Quinn, Esq., Asst. Attorney General, of Counsel.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I. INTRODUCTION

On November 28, 2001, plaintiff Cecilia Briggs commenced the instant action against defendants alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), Title I of the Americans With Disabilities Act, 42 U.S.C. § 12401, *et. seq.* ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("HRL"). Instead of filing an answer, defendants move to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) on the grounds that individuals are not liable under Title VII or the ADA, plaintiff's claims under the HRL and ADA are barred by the Eleventh Amendment, and her Complaint otherwise fails to state a claim under Title VII, the ADA or the HRL. Plaintiff opposes arguing that her claims are timely under the continuing violation exception and that the Complaint is otherwise sufficient to state claims under Title VII, the ADA and the HRL.

Oral argument was heard on August 23, 2002, in Albany, New York. Decision was reserved.

### II. FACTS

Plaintiff began working for the New York State Department of Transportation ("NYSDOT") in 1994 in the position of Highway Maintenance Worker I. (Comp. at ¶¶ 8, 9.) The Complaint alleges that plaintiff was subjected to the following incidents during her term of employment:

a. In or about 1998, a co-worker, Robert Tucker, kissed her;

b. In or about 1999, a co-worker, Rich Yearby, called her a cunt;

c. Commencing in January 2000 and continuing on various dates thereafter, one of her supervisors, Joseph Camastra ("Camastra"), began following her around telling her that he loved her;

d. On several occasions during 2000, Camastra exposed his genitals to her;

e. Commencing in the year 2000 and continuing on various dates thereafter, a co-employee, Mark Bonacci ("Bonacci"), spread rumors that he was having an affair with plaintiff and that she performed oral sex on him;

f. In or about August 2000, Bonacci pointed to his genital area and asked her to rub cream on his genitals;

g. In or about the fall of 1999, Bonacci told her to get up on the table on all fours and show her butt;

h. Since 2000, various NYSDOT employees, including her supervisors, made derogatory comments to her, including calling her a screw up and mental case;

i. Since 2000, she has been written up for missing work;

j. In or about August 2000, the NYSDOT pulled her driving certification;

k. Beginning in or about 2000, she was written up for using her sick time, while similarly situated male employees were not written up;

l. Co-employees smashed the windows in her van; and

m. The NYSDOT required her to retake the driving test, while similarly situated males were only required to undergo classroom training.

(*Id.* at ¶ 11.) The complaint further alleges that "on repeated occasions, Plaintiff complained to Defendant's management about the ... conduct to which she was subjected but Defendant management failed and/or refused to effectively investigate the alleged conduct or take any effective steps to stop the harassment to which Plaintiff was subjected." (*Id.* at ¶ 13.) As of November 2000, plaintiff "could no longer perform her job duties due to severe psychiatric conditions." (*Id.* at ¶ 8).

On March 26, 2001, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on account of her gender and disability and further alleging that she was retaliated against for complaining about sexual harassment. The EEOC complaint states, in part, that

I am a qualified individual covered under the provisions of the Americans with Disabilities Act.... Beginning in or around January 2000, and continuing until August 2000, I was subjected to a sexually offensive and hostile work environment by a supervisor. In or around November 2000, I complained about the harassment however, Respondent failed to fully investigate my claims or take effective action.

On or about December 8, 2000, I was informed that my certification had been pulled and that I would need to recertify. Upon information and belief male employees did not have to re-certify.

Twice in Febraury [sic] 2001, Respondent forced me to take psychiatric evaluations or face possible termination.

I believe I was subjected to a sexually offensive and hostile work environment, subjected to different terms and conditions of employment, and retaliated against for having complained about sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended. Additionally, I believe forced me to take medical examinations because of a perceived disability in viola-

tion of the Americans with Disabilities Act [sic].

*(See* Def. Mem. of Law at Ex. A.) [1]

Plaintiff received a right to sue letter on or about August 31, 2001.

## III. STANDARD OF REVIEW

The Supreme Court recently affirmed that " '[a] court may dismiss a complaint [under Fed.R.Civ.P. 12] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). The Supreme Court rejected this Circuit's practice of requiring a complaint to allege a *prima facie* case of discrimination to survive a motion to dismiss. *Swierkiewicz,* 534 U.S. at 508–14, 122 S.Ct. 992. The Court held that such a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 512, 122 S.Ct. 992 (quoting Fed.R.Civ.P. 8(a)). "This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed

facts and issues and to dispose of unmeritorious claims." *Id.* Thus, a complaint is sufficient if it gives the defendant fair notice of the plaintiff's claims, the grounds upon which they rest, and states claims upon which relief could be granted. *Id.* at 514., 122 S.Ct. 992

## IV. DISCUSSION

Defendants move to dismiss the Complaint on the grounds that (1) there is no individual liability under Title VII or the ADA; (2) plaintiff's allegations of discriminatory conduct alleged to have occurred prior to September 28, 2000 are time-barred; (3) plaintiff failed to exhaust her administrative remedies; (4) the DOT cannot be held liable for the acts of plaintiff's co-workers; (5) plaintiff's ADA claims are barred by the Eleventh Amendment; (6) plaintiff failed to establish a prima facie case of Title VII retaliation; (7) plaintiff's HRL claims are barred by the Eleventh Amendment; (8) plaintiff failed to state a claim of individual liability under the HRL; and (9) the supplemental state law claims should be dismissed under 28 U.S.C. § 1367(c)(3).

### A. Eleventh Amendment Immunity For ADA and HRL Claims

■ The Eleventh Amendment bars suits for money damages by reason of a

---

1. The EEOC charge may be considered in connection with defendants' motion to dismiss because, for purposes of Fed.R.Civ.P. 12, "the complaint is deemed to include any … statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (internal quotations and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)). Here, paragraph 17 of the Complaint incorporates

the EEOC charge by reference and the Complaint otherwise relies upon its terms and effect. *See Ruiz v. New York City Fire Dep't,* No. 00 Civ 4371, 2001 WL 767009, at *1 n. 2 (S.D.N.Y. July 9, 2001); *McBride v. Routh,* 51 F.Supp.2d 153, 155 (D.Conn.1999) (and cases cited therein) (taking the EEOC charge into consideration because it was either referenced in the complaint or a public record of which the court could take judicial notice). Plaintiff's submissions in opposition to defendants' motion will be disregarded because they were not attached to the Complaint, incorporated by reference, or heavily relied upon.

state's failure to comply with Title I of the ADA. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The Eleventh Amendment similarly bars claims under the HRL. *See Hayut v. State Univ. of N.Y.*, 127 F.Supp.2d 333, 340 (N.D.N.Y. 2000); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551, 558 (N.D.N.Y. 1999). Because the State of New York has not consented to suit in federal court and the Department of Transportation is an arm of the State, plaintiff's claims for money damages against the State of New York, the NYSDOT, and the individual defendants in their official capacities must be dismissed. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir.2001); *Richman v. Pediatric Serv. Group, LLP*, 222 F.Supp.2d 207, 209 (N.D.N.Y. 2002); *Hayut*, 127 F.Supp.2d at 340; *Phipps*, 53 F.Supp.2d at 558.

**B. *Individual Liability Under Title VII and the ADA***

■ It also is settled that there is no individual liability under Title VII. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir.2000) (holding that there is no individual liability under Title VII); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir.1995) (same). Further, in light of the similarity between Title VII and the ADA and, in particular, the definition of "employer" under those statutes, there is no individual liability under the ADA. *See Koslow v. Commonwealth of Penn.*, 302 F.3d 161, 178 (3d Cir.2002); *Silk v. City of Chicago*, 194 F.3d 788, 797 n. 5 (7th Cir. 1999); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir.1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Winokur v. Office of Court Admin.*, 190 F.Supp.2d 444, 450 (E.D.N.Y.2002); *Herzog v. McLane Northeast, Inc.*, 999 F.Supp. 274, 276 (N.D.N.Y.1998).

**C. · *The Timeliness of Plaintiff's Title VII Claims***

■ Before commencing suit alleging violations of Title VII, a plaintiff must first file a charge of discrimination with the EEOC within the statutory time period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002). Pursuant to 42 U.S.C. § 2000e–5(e)(1):

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of. the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

Thus, the time within which a charge of discrimination must be filed with the EEOC varies depending on whether a charge has initially been filed with an appropriate state agency. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998). If a charge is filed with a proper state agency, it must be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *see Morgan*, 536 U.S. at ——, 122 S.Ct. at 2070. In all other circumstances, the charge must be filed within one hundred and eighty days after the alleged

unlawful employment practice. *Id.* "A claim is time barred if it is not filed within these time limits." *Morgan*, 536 U.S. at ——, 122 S.Ct. at 2070.

■ New York has an agency, the New York State Division of Human Rights ("NYSDHR"), with authority to grant or seek relief from unlawful employment practices. *See* N.Y. Exec. Law §§ 290(3), 295; *Bd. of Higher Educ. of City of New York v. Carter*, 14 N.Y.2d 138, 250 N.Y.S.2d 33, 199 N.E.2d 141 (1964). Individuals who first file charges of discrimination with the NYSDHR may avail themselves of the longer three hundred day period within which they must file with the EEOC. *See Ford v. Fineson*, 81 F.3d 304, 313 n. 6 (2d Cir.1996) ("[B]efore the 180–day period is extended to 300 days: the person bringing the charge must initially institute proceedings with the state agency.") (internal quotations and alterations omitted). Here, plaintiff did not do that. Although plaintiff's charge of discrimination lists the NYSDHR as the state agency, there is no indication in her Complaint, the charge itself or elsewhere that she filed it with the NYSDHR. (*See* Def. Mem. of Law at Ex. A.; Comp. at ¶ 17.) Accordingly, the only timely allegations are those unlawful employment practices that occurred after September 28, 2000.[2] *See Ford*, 81 F.3d at 313 n. 6; *Harrington v. County of Fulton*, 153 F.Supp.2d 164, 168–9 n. 2 (N.D.N.Y.2001).

■ The next question, therefore, is what constitutes the "unlawful employment practices" for purposes of determining the timeliness of plaintiff's claims. *See generally Morgan*, 536 U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106. The Supreme Court rejected the notion that a continuing violation theory can be applied to discrete acts of unlawful employment practices.

*See id.* at 2071. As the *Morgan* Court stated:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory acts starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred.

*Id.* at 2072.

■ In the instant case, plaintiff's allegation that her driving certificate was pulled in or about August 2000, that she was reprimanded for using her sick time in the year 2000, and that she was required to retake the driving test constitute discrete acts of alleged discrimination. *See Miller v. New Hampshire Dep't of Corrections*, 296 F.3d 18, 22 (1st Cir.2002) (a letter of warning and performance evaluation is a discrete act). To the extent these discrete incidents occurred prior to September 28, 2000, they would be time-barred. At this stage of the litigation, it cannot be determined whether these acts are time-barred because the Complaint is too vague regarding the timing of these events. For example, plaintiff's driving certificate is alleged to have been pulled "in or about August 2000," (Comp. at ¶ 11(j)), and she was reprimanded for using sick time "beginning in the year 2000 and on various dates continuing thereafter." The Complaint provides no time for when she allegedly was required to retake the driving test or when she was reprimanded. It is possible that plaintiff could prove that they occurred within the 180 day period and, therefore, are timely. The precise timing of these discrete events likely can be ascertained through discovery and the untimely ones weeded out

**2.** September 28, 2000 is one hundred and eighty days before March 26, 2001, the date on which plaintiff filed her charge of discrimination.

through a motion for summary judgment. *See Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992.

With respect to hostile work environment claims, "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at ——, 122 S.Ct. at 2073. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years." *Id.* "Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Id.* at 2075. "It does not matter ... that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability." *Morgan*, 536 U.S. at ——, 122 S.Ct. at 2074. "In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 2075. Thus, in determining whether a hostile work environment claim is timely, "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any fact falls within the statutory time period." *Id.* at 2076.

■ Defendant argues that no acts contributing to the hostile work environment claim occurred within the 180 day period. The sole incident alleged to have occurred in 1998 (whereby Tucker kissed plaintiff) is unrelated to the conduct in 1999 and 2000. (*Compare* Comp. ¶¶ 11(a) with ¶¶ 11(c)-(m).) That incident occurred well before

any other incidents and involved a co-worker who is not alleged to have been involved in any of the other conduct. Accordingly, the 1998 incident is not part of the same hostile work environment as those incidents occurring in or after the fall of 1999 and, therefore, is untimely. *See Morgan*, 536 U.S. at ——, 122 S.Ct. at 2075.

■ With respect to the other alleged incidents, although there may be merit to defendants' argument, that issue cannot be resolved on the instant motion to dismiss. Plaintiff's EEOC charge limits the hostile work environment claim to the period of January through August 2000.[3] However, the charge goes on to state that plaintiff complained about the harassment in November 2000 and that defendant failed to take effective action. This suggests that the harassment continued into November 2000, when plaintiff left her job. It may reasonably be inferred that plaintiff would not have complained in November 2000 had the alleged harassment stopped several months earlier. Accepting all factual allegations as true and drawing all reasonable inferences in favor of plaintiff, *see Patel v. Searles*, 305 F.3d 130, 134–35 (2d Cir.2002), together, the Complaint and EEOC charge can be interpreted to include acts within the 180 day filing period. Whether the incidents alleged to have occurred during this time frame actually are part of the same hostile work environment claim and whether any act contributing to the alleged hostile work environment claim occurred within the 180 day period is more appropriately addressed on a motion for summary judgment or at trial. *See Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992.

3. Plaintiff's EEOC charge states, in part, that "[b]eginning in or around January 2000, and continuing until August 2000, I was subjected to a sexually offensive and hostile work environment by a supervisor." August 2000 is outside the 180 day filing period.

### D. Whether Plaintiff Exhausted Her Administrative Remedies

■ Defendants next contend that many of plaintiff's allegations were not properly exhausted because her EEOC charge was insufficiently specific. "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993); *see also Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir.2002). "Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.' " *Alfano*, 294 F.3d at 381 (quoting *Butts*, 990 F.2d at 1402–03). The ADA similarly requires the exhaustion of administrative remedies. *See* 42 U.S.C. § 12117; *Cooney v. Consolidated Edison*, 00 Civ. 4965, 2002 WL 31059310, at *11 (S.D.N.Y. Sept.16, 2002); *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir.2002); *Jacques v. DiMarzio, Inc.*, 216 F.Supp.2d 139, 144 (E.D.N.Y.2002); *Herzog*, 999 F.Supp. at 275.

### 1. Whether Plaintiff Exhausted Her Administrative Remedies Concerning Her Hostile Work Environment Claim

■ While Title VII allows for loose pleadings before the EEOC and a complainant need not list every detail of her alleged discriminatory treatment, a charge of discrimination needs to provide sufficient specifics to afford the EEOC a reasonable opportunity to fulfill its obli-gations to investigate the complaint and attempt to mediate a resolution. *See Butts*, 990 F.2d at 1402–03. The allegations in plaintiff's EEOC charge are "too vague to serve as predicates for [the] allegations [of a hostile work environment] in the complaint." *Id.* (holding that statements in an EEOC charge that the plaintiff had "consistently been the target of discriminatory practices and treatment" and that she was "denied promotional opportunities and consideration based on [her] race and sex" were too vague); *see also Alfano*, 294 F.3d at 382; *Crespo v. New York City Transit Auth.*, No. 01–CV–0671, 2002 WL 398805 at *9 (E.D.N.Y. Jan 7, 2002); *Castro v. New York City Dep't of Sanitation*, 96–Civ–7745, 2000 WL 1514630, at *6 (Oct. 12, 2000), *aff'd*, 13 Fed.Appx. 63, 2001 WL 792659 (2d Cir. 2001); *Findlay v. Reynolds Metals Corp.*, 82 F.Supp.2d 27, 33–34 (N.D.N.Y.2000); *Cooper v. Xerox Corp.*, 994 F.Supp. 429, 432 (W.D.N.Y.1998). Plaintiff's charge provides no clue as to what acts, or types of acts, contributed to the alleged hostile work environment, or which co-workers and/or supervisors allegedly were involved.

There are no allegations in the charge that a co-worker kissed plaintiff, co-workers called plaintiff derogatory names, a supervisor followed her around and expressed his love for her, a supervisor exposed his genitals to her, a co-worker spread rumors that she was having an affair and performed oral sex on him, a co-worker asked her to spread cream on his genitals, a co-worker told her to get on the table and show her buttocks, co-workers and a supervisor made derogatory remarks concerning her gender and alleged mental disability, she was written up for missing work due to an alleged disability, she was written up for using her sick time while similarly situated males were not, she was required to retake the driving test while similarly situated males were not, or

that her van windows were smashed in retaliation for complaining about harassment. The EEOC "cannot be expected to investigate mere generalizations of misconduct, nor can defendants adequately respond to them." *Choi v. Chemical Bank*, 939 F.Supp. 304, 313 (S.D.N.Y.1996); *see also Cable v. New York State Thruway Auth.* 4 F.Supp.2d 120, 127 (N.D.N.Y. 1998). As the Second Circuit stated in *Butts*, "[w]ere we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated." 990 F.2d at 1403. Because plaintiff's allegations of a hostile work environment in her Complaint are neither contained in her EEOC charge nor reasonably related thereto, she has failed to exhaust her administrative remedies.

### 2. Whether Plaintiff Exhausted Her Administrative Remedies Concerning Her Allegations of Disparate Treatment

 Plaintiff's EEOC charge plainly states that her driving certification was revoked and she was required to re-certify while similarly situated males were not required to re-certify. Thus, these claims were properly exhausted.

Plaintiff's EEOC charge contains no allegations that she was given written warnings for using sick time whereas similarly situated male employees were not given warnings. Plaintiff was well aware of this incident by the time she filed her EEOC

charge and, therefore, was in a position to include it. Moreover, being written up for using sick time is factually distinct from the allegations that her driving certification was revoked and that she was required to re-certify on account of her gender and, therefore, cannot be said to fall within the reasonably expected scope of an EEOC investigation. Accordingly, plaintiff failed to exhaust her administrative remedies concerning this allegation.

### 3. Whether Plaintiff Exhausted Her Administrative Remedies Concerning Her Claim of Retaliation

 Plaintiff's EEOC charge states that she complained about sexual harassment in or about November 2000 and that her driving certification was pulled in December 2000.[4] The charge continues to state that plaintiff believed she was retaliated against for complaining about sexual harassment. This is sufficient information upon which the EEOC could have investigated plaintiff's allegations of retaliation.

### 4. Whether Plaintiff Exhausted Her Claims Under The ADA

 While plaintiff's EEOC charge hardly is a model of clarity and there is ample room for argument that it is too vague to substantiate her ADA claim, it is a sufficient predicate for the allegation in her Complaint that defendants revoked her driving certification because of her alleged disability. The charge allegations that plaintiff believes she is a qualified individual with a disability, her driving certification was pulled, and that she believes she was forced to take examinations because of a disability or perceived disability

---

**4.** A factual anomaly is presented because, in her EEOC charge, plaintiff contends that her certification was pulled in December 2000 whereas, in her Complaint, she alleges it was pulled in August. The truth surrounding this

factual anomaly and the legal consequences thereof can best be determined through a summary judgment motion after the parties conduct discovery.

reasonably would alert the EEOC to investigate disability discrimination with respect to the specific incidents alleged in the charge (*i.e.*, the revocation of her driving certification and the requirement that she take medical examinations).[5]

### E. *Whether Plaintiff Has Stated A Claim For Retaliation*

 The Complaint alleges that plaintiff complained about sexual harassment and that defendants pulled her driving certification in response thereto. Defendants argue that plaintiff fails to state a claim for retaliation because the revocation of her driving certification pending her successfully passing an examination does not constitute an adverse employment action.

"An adverse employment action is a 'materially adverse change in the terms and conditions of employment.'" *Weeks v. New York State Div. of Parole*, 273 F.3d 76, 85 (2d Cir.2001) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)).

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Such a change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Weeks*, 273 F.3d at 85 (internal quotations, citations and alterations omitted).

Here, plaintiff alleges that "Defendants pulled ... [her] driving certification and required her to retake the driving test alleging that she did not have enough driving time." (Comp. at ¶ 11(m).) It is doubtful whether the requirement that plaintiff retake the driving test constitutes a materially adverse change in the terms and conditions of employment. *See Weeks*, 273 F.3d at 85–87. For purposes of the instant Rule 12(b)(6) motion, however, plaintiff "need not plead a prima facie case of [retaliation]." *See Swierkiewicz*, 534 U.S. at 515, 122 S.Ct. 992. Plaintiff has alleged sufficient facts to put defendants on notice of her claim, the grounds upon which they rest, and states a claim upon which relief could be granted under Title VII. *Id.*[6] Whether the revocation of plaintiff's driving certification constitutes a materially adverse change in the terms and conditions of her employment under the circumstances of this case will depend upon other facts developed during the course of discovery and, therefore, is more appropriately reviewed on a motion for summary judgment.[7]

---

**5.** Plaintiff does not allege in her Complaint that she was required to undergo medical examinations because of a disability. Accordingly, that is not at issue in this case. Further, although plaintiff appears to link the revocation of her driving certification with her gender (*i.e.*, she specifically states that similarly situated males were not required to re-certify), under the circumstances of this case, a reasonable EEOC investigation could also include the inquiry of whether her driving certification was revoked on account of a disability or perceived disability.

**6.** Discovery may reveal that, based on the timing of the events at issue (*i.e.* plaintiff's driving certification may have been revoked before she engaged in protected activity), there is no causal connection between plaintiff's protected activity, if any, and any alleged adverse employment actions. This is a factual issue more appropriately addressed at summary judgment or trial. For purposes of the instant motion, the Complaint adequately alleges that "in or about August 2000, the Plaintiff's driving certification was pulled in retaliation for complaining about the various acts of sexual harassment." (Compl. at ¶ 11(j).) It can reasonably be inferred from this allegation that plaintiff engaged in protected activity before her certification was pulled and, therefore, is sufficient to withstand defendants' motion to dismiss.

**7.** As previously discussed *supra,* this claim may well be time-barred. The Complaint states that plaintiff's driving certification was

## F. Whether Plaintiff May Hold The Individual Defendants Liable Under the HRL

The New York State Court of Appeals has held that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on ... sex under New York's Human Rights Law ... if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). Thus, individual liability is sharply circumscribed under section 296(1). While this would seem to doom plaintiff's HRL claims against the individual defendants, in *Tomka*, the Second Circuit held that section 296(6)'s aider and abettor provision supplies a basis for imposing liability upon individuals who actually participate in the conduct giving rise to the discrimination claim. *Tomka*, 66 F.3d at 1317; *see also Petrosky v. New York State Dep't of Motor Vehicles*, 72 F.Supp.2d 39, 64–65 (N.D.N.Y.1999). The Complaint does not allege that Charles Lamendola, the administrator officer of the NYSDOT, participated in the conduct giving rise the discrimination claim. Accordingly, he may not be held individually liable under the HRL. With respect to the other named defendants, however, the Complaint alleges that they were personally involved in the discriminatory conduct and, therefore, may be subject to individual liability.[8]

## G. Failure to File a Notice of Claim

In its reply papers, Defendants argue for the first time that plaintiff's HRL claims against the NYSDOT and State of New York should be dismissed because plaintiff failed to file a notice of claim in accordance with section 10(3) of the Court of Claims Act.[9] "The state cannot be sued without its consent and it has the right, when authorizing the maintenance of proceedings for the recovery of claims against it, to impose such terms and conditions and to prescribe such procedures as its legislative body shall deem proper." *Buckles v. State*, 221 N.Y. 418, 424, 117 N.E. 811 (1917) (quoting *Gates v. State*, 128 N.Y. 221, 228, 28 N.E. 373 (1891)). New York exercised this right when it enacted the Court of Claims Act which governs most actions for money

---

pulled in or about August 2000 whereas the EEOC charge states that it was pulled in November 2000. When her certification was revoked likely is a fact that can easily and definitively be determined through minimal discovery. If, in fact, the certification was revoked in August, then this claim is untimely. If there are undisputed facts that the certification was revoked in August 2000, then defendants may move for summary judgment to dismiss that claim as untimely.

8. Although John Collins is not identified by name in the body of the Complaint, he is identified as a supervisor in the caption and the Complaint vaguely alleges that "employees of the Defendants, including her supervisors made various derogatory comments to Plaintiff due to her sex and mental disability." (*See* Comp. at ¶ 11(h).) These allegations are sufficient, at this stage of the litigation, to withstand defendants' motion to dismiss in this regard.

9. Section 10(3) of the Court of Claims Act provides, in part, that

No judgment shall be granted in favor of any claimant unless such claimant shall have complied with the provisions of this section applicable to his claim.... A claim to recover damages for injuries to property or for personal injury caused by the negligence or unintentional tort of an officer or employee of the state while acting as such officer or employee, shall be filed within ninety days after the accrual of such claim unless the claimant shall within such time file a written notice of intention to file a claim therefor, in which event the claim shall be filed within two years after the accrual of such claim.

damages against the state. *Koerner v. State,* 62 N.Y.2d 442, 448, 478 N.Y.S.2d 584, 467 N.E.2d 232 (1984). "For the most part, [New York's] waiver of immunity as to actions for money damages is limited to actions commenced in the Court of Claims." *Id.* (internal citation omitted); *see also* N.Y. Court of Claims Act § 8.[10] The general rule under the Court of Claims Act is that, before an action against the state or one of its agencies may be commenced in the Court of Claims, the claimant must first timely file a notice of claim. *See* N.Y. Court of Claims Act § 10.

The requirements of the Court of Claims Act do not, however, necessarily apply to claims against the state or its agencies brought under the HRL. The New York State Court of Appeals has held that the state may be sued for violations of the HRL in a forum other than the Court of Claims. *See Koerner,* 62 N.Y.2d at 448–49, 478 N.Y.S.2d 584, 467 N.E.2d 232 ("[T]he Legislature must be deemed to have waived both the State's immunity to suit and the requirement that it be sued in the Court of Claims."). In light of the facts that the Commissioner of the NYSDHR can award compensatory damages against the state without the filing of a notice of claim pursuant to section 10 of the Court of Claims Act or resort to the Court of Claims, *see id.* at 448, 478 N.Y.S.2d 584, 467 N.E.2d 232, the state waived the requirement that it be sued in the Court of Claims, *see id.* at 449, 478 N.Y.S.2d 584, 467 N.E.2d 232, the HRL's three year statute of limitations applies to the state (as opposed to any other shorter periods found elsewhere, such as in section 10 of the Court of Claims Act), *see id.* at 447, 478 N.Y.S.2d 584, 467 N.E.2d 232; *see also Toxey v. State,* 279 A.D.2d 927, 928, 719 N.Y.S.2d 765 (3d Dep't) (noting that

section 10 of the Court of Claims Act serves as a statute of limitations for certain claims against the state), *leave to appeal denied,* 96 N.Y.2d 711, 727 N.Y.S.2d 696, 751 N.E.2d 944 (2001); *Englehart v. State,* 278 A.D.2d 361, 718 N.Y.S.2d 620 (2d Dep't 2000) (same), and the notice of claim serves to deprive the Court of Claims, but not other courts, of jurisdiction, *see State v. Dewey,* 260 A.D.2d 924, 925, 688 N.Y.S.2d 840 (3d Dep't 1999) (failure to comply with section 10 of the Court of Claims act deprives the Court of Claims of jurisdiction); *Figueroa v. State,* 126 Misc.2d 304, 481 N.Y.S.2d 946, 947–48 (N.Y.Ct.Cl.1984) (the procedural rules in the Court of Claims Act only apply to claims commenced in the Court of Claims), the state similarly must have waived the procedural requirements imposed on actions under the HRL that are not commenced in the Court of Claims. *See Koerner,* 62 N.Y.2d at 447–49, 478 N.Y.S.2d 584, 467 N.E.2d 232. Had plaintiff instituted this action in the Court of Claims, she would have been subject to that court's procedures, including section 10(3)'s notice of claim requirement. *See Figueroa,* 481 N.Y.S.2d at 947. Because, however, she chose to litigate her claims in this court, the notice requirement of section 10(3) of the Court of Claims Act is inapplicable. *See id.*

## V. CONCLUSION

Plaintiff's claims for monetary damages under the ADA and the HRL against the State of New York, the NYSDOT and the individual defendants in their official capacities are barred by the Eleventh Amendment. The individual defendants cannot be held liable in their individual capacities under Title VII or the ADA. The

---

**10.** Section 8 reads, in part, that

The state hereby waives its immunity from liability ... provided the claimant complies

with the limitations of this article.

Complaint allegation that a co-worker kissed her in 1998 is untimely. Plaintiff failed to exhaust her administrative remedies with respect to her hostile work environment claims and her claim that she received written warnings for using sick time on account of her gender. The Complaint fails to state a claim for individual liability against Charles Lamendola. At this stage, with related matters still pending, the state law claims will not be dismissed pursuant to 28 U.S.C. § 1367(c).

Accordingly, it is

ORDERED that defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED IN PART as follows:

1. Plaintiff's claims for monetary damages under the ADA and the HRL against the State of New York, the NYSDOT and the individual defendants in their official capacity are DISMISSED;

2. Plaintiff's claim of a hostile work environment under Title VII is DISMISSED;

3. Plaintiff's claim of disparate treatment concerning written warnings she received for using sick time is DISMISSED;

4. Plaintiff's claims under Title VII and the ADA against the individual defendants in their individual capacities are DISMISSED; and

5. Plaintiff's claim against Charles Lamendola under the HRL is DISMISSED.

6. In all other respects, Defendants' motion to dismiss is DENIED.

The defendants are directed to file and serve an answer to the complaint on the remaining claims on or before November 22, 2002.

IT IS SO ORDERED.