**CONFEDERACION LABORISTA DE PUERTO RICO, et al., Plaintiffs,**

**v.**

**CERVECERIA INDIA, INC., Defendant.**

**Civ. No. 84–1394 GG.**

United States District Court, D. Puerto Rico.

April 17, 1985.

---

Jesús Hernández Sánchez, Santurce, P.R., for plaintiffs.

Tristan Reyes Gilestra, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., for defendant.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an action brought by plaintiffs, Confederación Laborista de Puerto Rico and Unión de Empleados Vendedores de la Cerveceria India, Inc. (the Union), together with certain former employees of the employer, Cerveceria India (the Employer), seeking damages for an alleged unlawful dismissal made in violation of the collective bargaining agreement. Jurisdiction is invoked pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, et seq.[1]

---

1. 29 U.S.C. § 185 provides in part:

Suits for violation of contract between an employer and a labor organization represent-

Succinctly stated, the Union seeks compensatory and punitive damages on its behalf and that of the dismissed employees as a result of the discharge. The Union argues that the Employer has refused to arbitrate the dismissal of the employees even though it was requested to do so, and has kept the employees out of their jobs.

The individual plaintiffs assert that this court has pendent jurisdiction to entertain certain state law claims pursuant to 31 L.P.R.A. § 2991 et seq., which governs the enforcement of private obligations and contracts. These claims are grounded on the Employer's unilateral rescission of the contract.

On the other hand, defendant has filed a motion for summary judgment claiming that we do not have jurisdiction to entertain the claims presented, since they are the subject of binding arbitration between the parties pursuant to the contractual remedies of the collective bargaining agreement which must be exhausted prior to filing suit under Section 301. Defendant also argues that this court cannot exercise pendent jurisdiction over certain state law claims due to the insubstantiality of the federal claims advanced.

A brief summary of the facts is necessary. On June 13, 1981, the Union and the Employer executed a Collective Bargaining Agreement which expired on May 25, 1984. This agreement covered plaintiffs who were employed as salesmen for the Employer. Some of the relevant provisions of the Collective Bargaining Agreement are included in an Annex to this opinion.

On January 11, 1984, the Employer discharged all of its salesmen employees due to an economic crisis. This action was notified to Mr. Román Vélez Mangual, president of the Confederación Laborista de Puerto Rico, by letter dated January 10, 1984.

Thereafter, on January 13, 1984, Mr. Vélez Mangual submitted a grievance for unjustified discharge before the Grievance Committee.

By letter dated January 20, 1984, Mr. Pérez Sosa scheduled a meeting for January 24, 1984, in accordance with the procedure established in Article XXIV, Section 4, which provides that all grievances arising during the term of the agreement shall be initially treated in an administrative manner between the parties. Subsequently, the meeting was rescheduled and held on February 1, 1984, at the Bureau of Conciliation and Arbitration (the Bureau) of the Puerto Rico Department of Labor. Another meeting was also held by the parties at the Bureau on February 9, 1984.

On February 14, 1984, the parties submitted the grievance to the Bureau as provided in the agreement. Coetaneously, Mr. Vélez Mangual submitted an application for designation of an arbitrator to mediate the grievance concerning the alleged unjustified discharges. This document was accompanied by a letter of even date from Mr. Vélez Mangual to the Director of the Bureau.

Thereafter, upon request of the parties, the grievance was designated a number and the case was scheduled for hearing on August 30, 1984 by the arbitrator, Mr. Angel R. Marín. The hearing was rescheduled for November 30, 1984.

On June 27, 1984, Mr. Vélez Mangual notified the Director of the Bureau that he was withdrawing the grievance before the Bureau because suit had been filed in federal court. Notwithstanding the petition made by Mr. Vélez Mangual, the arbitrator refused to terminate the administrative proceedings, since he found that the Union's petition lacked legal grounds.

Additionally, the Union also filed an unfair labor practice charge against the employer before the National Labor Relations Board alleging several violations of the National Labor Relations Act. After consider-

ing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

ation, the charge was administratively deferred by the National Labor Relations Board upon a finding that the dispute was arguably cognizable under the agreement which contained a binding arbitration clause and that the Employer was willing to arbitrate the dispute.

Notwithstanding the above-cited facts, the Union argues that since it withdrew the unfair labor practice charge before the National Labor Relations Board and the arbitrator, this court is not preempted. Furthermore, the Union argues that it notified the arbitrator that redress would be sought in court in accordance with Article XXV of the Collective Bargaining Agreement which provides:

No Strikes or Lock-Outs

Section 1: Nor (sic) the Union, nor any of its officers, or members, or groups, or employees of the COMPANY, shall declare a strike or work stoppage in the factory, warehouses, offices or in any other dependency of the COMPANY, nor urge such declaration, directly or indirectly, nor foment a stoppage nor abandon work, nor carry out measures which prejudice industrial peace or production and the normal work of the COMPANY.

Section 2: The COMPANY commits itself not to declare a lock-out.

Section 3: Regardless of the magnitude of the dispute which arises in the factory, warehouses, or offices, *it shall be the obligation of the contractual parties to appeal to the Grievance and Complaint Committee in order to find an adequate and appropriate remedy;* provided that in the event of *a violation of one of the parts of the provisions of this article,* the aggrieved party may appeal to the courts in order to protect its rights, without the necessity of first exhausting contractual remedies. (Emphasis supplied).

The aforecited article expressly permits direct resort to the courts only when either party breaches its terms. It refers to the specific terms of that article and not the terms of any other article contained in the agreement. Moreover, Article XXV refers exclusively to two specific instances of breach: a strike by the Union and a lockout by the Employer. Clearly, the parties intended that resort to the grievance and arbitration procedure be non-exclusive only in those two particular circumstances. In the absence of those circumstances, the language is clear that resort to the grievance procedure shall be exclusive.

■ The record reveals that the Employer "has seen the need to end and terminate the operation of sales and distribution of our Division of Beer and Malt Liquor in all districts" due to an economic crisis. Clearly, this is a termination of operations and not a "lockout". A "lockout" is "the withholding of employment by an employer from his employees for the purpose of resisting their demands or gaining a concession from them." Charles J. Morris, *The Developing Labor Law,* Vol. II, p. 1034 (2d Ed.1983). Since there was no strike and the Employer had not decreed a "lockout", the court remedy provided in Article XXV was not triggered, and consequently, plaintiff must exhaust the grievance remedies provided in Article XXIV of the Collective Bargaining Agreement prior to filing suit under Section 301.

■ It is axiomatic that if the collective bargaining agreement establishes a mechanism to solve disputes and grievances, the parties should ordinarily adhere to that mechanism and will not be permitted to unilaterally dodge or disregard the same. Differently stated, "[t]he collective bargaining agreement cannot so cavalierly be pushed aside." *Condon v. Local 2944, etc.,* 683 F.2d 590 (1st Cir.1982). It is to "such voluntarily selected machinery that [the parties] must normally look for resolution of disputes." *Early v. Eastern Transfer, et al,* 699 F.2d 552 (1st Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 93, 78 L.Ed.2d 100.

Although in a disparate context, the Supreme Court in *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) stated that:

... the courts of appeals have since consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*See also* cases cited in note 3 and the case of *Republic Steel v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

It is obvious that if an employee is allowed to disregard the grievance procedures incorporated in the collective bargaining agreement by the easily formulated allegation that the employer repudiated the grievance procedure or that the union breached its duty of fair representation, we would be effectively destroying the machinery established by the parties for the speedy resolution of their labor disputes. To permit an employee to completely sidestep the available grievance procedures in favor of a lawsuit "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). Such a result would be against the clear intention of the parties and against the purposes expressed by Congress in 29 U.S.C. 1739(d). *See Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

Since the employees' claims are based upon breach of the collective bargaining agreement, they are bound by the terms of that agreement which provides for a grievance and arbitration procedure, as in the case here. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In *Vaca v. Sipes, supra*, the Supreme Court recognized certain circumstances under which an employee could obtain judicial review of his breach-of-contract claim despite his failure to resort to his contractual remedies. 386 U.S. at 185. The first was when the conduct of the employer amounted to repudiation of the contractual procedures and second, was when the employee had been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance.

The record as it stands now fails to show that the employer repudiated or in any way frustrated the grievance process. Quite to the contrary, the facts reveal that the employer was actively participating in the grievance procedures until plaintiffs unilaterally elected to withdraw from arbitration in favor of filing suit in this court. Nor does the record show that the union has breached its duty of fair representation nor have they so alleged.

Finally, we address plaintiffs' pendent state law claims for breach of contract based on the Employer's unilateral rescission of the contract (the collective bargaining agreement).

Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and Treaties made under their Authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Clearly, the pendent state law claim must be dismissed under the authority of *Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139. If the federal claim is dismissed before trial, even though not insubstantial in a jurisdictional sense the state claim should be dismissed as well. *Cf. Rice v. President and Fellows of Harvard College*, 663 F.2d 336, 339 (1st Cir. 1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444.

Therefore, defendant's motion for summary judgment is granted. The present complaint is dismissed without prejudice

that plaintiffs, if they so desire, continue to prosecute their grievances in accordance with the procedures established in the collective bargaining agreement, since that was precisely what the parties bargained for.[2]

The clerk shall enter judgment accordingly.

SO ORDERED.

## ANNEX

## ARTICLE XXIV

## COMPLAINTS AND GRIEVANCES COMMITTE

Section 1. There shall be a Complaints and Grievances Committee to resolve the controversies brought to its consideration.

\* \* \*

Section 3. Any of the signatory parties could file complaints through its official representatives, before the Complaints and Grievances Committee for its consideration and resolution.

Section 4. It is provided that every complaint that arises during the period this Collective Bargaining Agreement is in force, shall be initially treated in an administrative manner between the parties.

Section 5. The term "grievance" is hereby defined as a controversy between the COMPANY, as one party, and one or several employees members of the UNION, as the other party. These controversies shall be limited to any of the following:

A) Any controversy referring to the working conditions covered by this contract or any other working condition that might affect the employees, as long as the same is not an amendment to this contract.

B) Any controversy referring to the interpretation of any of the provisions of this contract.

C) Any controversy that involves the violation of any of the clauses of this contract.

Section 6. The procedure for the solution of the Complaints and Grievances shall adjust to the following rules:

A) The UNION's Delegate and the Sales Managers in each district shall originally hear every complaint and shall have the power to investigate the facts that motivate it. To these ends, the proper arrangements shall be made. The complaints shall be heard Fridays unless the same involves the suspension of employment or termination, in which case both parties shall come to an agreement so as to see the case not later than seventy two (72) hours after the action taken. The agreement arrived by those officers shall be included, signed by both parties, in the employee's records.

\* \* \* \* \* \*

D) The Complaints and Grievances Committee shall resolve any complaint under its consideration within the term of seven (7) days following the celebration of the hearings that might be necessary.

\* \* \* \* \* \*

I) Within three (3) days after the final hearing, the Committee shall prepare a record of the agreements reached or in its default, a record of the facts occurred and actions taken in the matter. Said record shall be signed by the members of the Committee.

\* \* \* \* \* \*

L) The resolution of the Complaints and Grievances Committee shall be final and binding for both parties.

M) It is agreed that by mutual consent of the parties, the first two steps established in Section 6(A) and 6(C) of Article XXIV can be deleted, in order to submit the arising complaint directly to an arbiter, that shall be selected by mutual consent.

Section 7. In the case where the majority of the members of the Committee cannot reach an agreement in the solution of a complaint, an arbiter will then be selected.

---

**2.** After the drafting of this opinion, the parties filed several motions which indicate, *inter alia,* that there is still pending before the arbitrator a motion for reconsideration filed by the Union.

We have considered these motions and, notwithstanding their contents, our decision today remains unaltered.

The arbiter shall be selected by common agreement between the members of the Committee from among the arbiters of the Puerto Rico Labor Department. If the parties could not reach an agreement as to the designation of this arbiter, the designation made by the Secretary of Labor of Puerto Rico to that effect shall prevail.

Section 8. Once the arbiter is selected and appointed, the Complaints and Grievances Committee shall submit to said arbiter the complaint for its final solution. Said arbiter shall give the complainant and the defendant the opportunity to state their allegations and to prove their points and shall have the power invested in him to summon witnesses and obtain evidence that is pertinent for the best solution of the controversy at hand.

Section 9. The arbiter shall call for a meeting, hold a hearing or as many as necessary and shall decide the complaint within the maximum term of fifteen (15) days after the submission of the case to him.

Section 10. The arbiter's resolution shall be final, and when the same is in accordance with the law, the parties shall be bound to execute it.

\*   \*   \*

Section 12. In case the Complaints and Grievances Committee or the arbiter decides that the aggrieved employee has been suspended or terminated by the COMPANY without justifiable cause, it shall have the power to order the reinstatement of the employee with retroactive payment as of the date in which he was deprived of his employment and salary. It can also order the retroactive or prospective payment of any salary differential or to provide other benefits that the aggrieved employee has a right to according to the terms of the Collective Bargaining Agreement. Likewise, the arbiter could modify the penalty or disciplinary measures imposed by the COMPANY, pursuant to the facts of the case.