Orlando **RIVERA SÁNCHEZ,** Plaintiff,

v.

**AUTORIDAD DE ENERGIA ELECTRICA, et al.,**
Defendants.

No. CIV.03–2179 HL.

United States District Court,
D. Puerto Rico.

March 1, 2005.

Rosa M. Nogueras, San Juan, PR, for Plaintiffs.

Patricia Guijarro–Alfonso, Maria Judith Surillo, Guaynabo, PR, Ana M. Margarida–Julia, for Defendants.

## ORDER

LAFFITTE, District Judge.

Plaintiff Orlando Rivera Sánchez ("Rivera") brings this action against the Puerto Rico Electric Power Authority ("PREPA"), Héctor R. Rosario (PREPA's Executive Director), Isabel Nieves de Sánchez (PREPA's Interim Supervisor of the Claims and Judicial Investigation Department), and Ana Blanes (PREPA's Human Resources Division Director) alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990(ADA), the

United States Constitution, and the Constitution of the Commonwealth of Puerto Rico.

Before the Court is the Magistrate Judge's Report and Recommendation (Docket No. 49), recommending that defendants' motions to dismiss the amended complaint (*see* Docket Nos. 22, 44) be granted in part and ·denied in part. Co-defendants Héctor Rosario ("Rosario"), Isabel Nieves de Sánchez ("Nieves"), and Ana Blanes ("Blanes"), in their personal capacities, submitted objections to the Report and Recommendation (Docket No. 50), and plaintiff Rivera filed an opposition to these objections (Docket No. 54).

For the reasons set forth below, the Court **approves and adopts** the Magistrate Judge's Report and Recommendation in its entirety. Accordingly, defendants' motions to dismiss are **granted in part and denied in part**.

## STANDARD OF REVIEW

A district court, may on its own initiative, refer a pending matter to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); D.P.R. R. 72. Under Rule 72(b) of the Federal Rules of Civil Procedure, the Court is obligated to make a "de novo determination ... of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." The Court thereafter "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Phinney v. Wentworth Douglas Hospital,* 199 F.3d 1 (1st Cir.1999) (quoting 28 U.S.C. § 636(b)(1)(C)).

## DISCUSSION

In the Report and Recommendation, Magistrate Judge Camille Velez–Rive rec-

ommends the following: (1) Defendants' motions to dismiss for failure to state a claim under 42 U.S.C. § 1983 be denied. (2) Co-defendants Blanes, Rosario, and Nieves' motion to dismiss on the grounds that they enjoy qualified immunity be denied at this time. (3) Defendants' motions to dismiss for failure to state a claim under 42 U.S.C. §§ 1985 and 1986 be granted as to all defendants. (4) Defendants' motions to dismiss the ADA and Rehabilitation Act claims against PREPA be denied. (5) Defendants' motions to dismiss the ADA claims against individual co-defendants Blanes, Rosario, and Nieves be granted for lack of individual liability. (6) Pendent jurisdiction should be exercised over plaintiff's state law claims. Co-defendants Blanes, Rosario, and Nieves object to the Report and Recommendation on the grounds that plaintiff's § 1983 claims against them are time-barred and that they are entitled to qualified immunity.

In the amended complaint, plaintiff alleges that on February 13, 2003, Sylvette López, from PREPA's "program to help the employee," advised plaintiff that PREPA should approve the retirement of plaintiff due to mental impairment and that plaintiff's emotional condition was not work-related. Plaintiff avers that this early retirement was involuntary and that it shows a pattern of discrimination against him due to his political affiliation and mental incapacity. Co-defendants contend that they cannot be liable for the actions of Sylvette López. Plaintiff avers that co-defendants are liable under a supervisory liability theory.

For a supervisor to be liable under § 1983, the plaintiff must demonstrate (1) that the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right, (2) that his conduct or inaction amounted to reckless or callous

indifference to the constitutional rights of others, and (3) that there was an affirmative link between the misconduct and action or inaction of supervisory officials. *See Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989); *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989). However, "[s]upervisors need not have personal knowledge of the alleged violation ... if they were indirectly responsible for or could have prevented the challenged act." *Figueroa,* 864 F.2d at 953.

Here, plaintiff asserts that co-defendants Blanes, Rosario, and Nieves were directly responsible for López's actions. When determining a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in plaintiff's favor. *See Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996). Dismissal under Rule 12(b)(6) is appropriate only when the facts alleged, taken as true, do not justify the recovery. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Under this standard, the Court cannot conclude that plaintiff does not have *any* claim under § 1983 against co-defendants Blanes, Rosario, and Nieves. Therefore, at this time, dismissal of plaintiff's § 1983 claims against co-defendants would not be appropriate.

Further, in cases brought pursuant to § 1983, the Court applies the forum state's statute of limitations period for personal injury actions, which in Puerto Rico is one year. *Ruiz–Sulsona v. Univ. of Puerto Rico,* 334 F.3d 157, 160 (1st Cir. 2003). The event which serves as the basis for plaintiff's § 1983 claims occurred on February 13, 2003. The complaint was filed on November 3, 2003. Therefore, plaintiff's § 1983 claims against co-defendants are not time-barred.

Co-defendants also argue that they are entitled to qualified immunity. In determining whether the co-defendants are entitled to qualified immunity, the threshold question the Court must ask is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If the facts alleged show that the officer's conduct violated a constitutional right, the Court must ask whether "the contours of this right are 'clearly established' under then-existing law so that a reasonable officer would have known that his conduct was unlawful." *Santana v. Calderon,* 342 F.3d 18, 23 (1st Cir.2003) (citing *Dwan v. City of Boston,* 329 F.3d 275, 278 (1st Cir.2003)). If both inquires are answered in the affirmative, a defendant will not be afforded qualified immunity.

In the amended complaint, plaintiff claims that co-defendants violated his well-established constitutional rights under the First, Fifth, and Fourteenth Amendments. Thus, it would be premature at this time for the Court to find that co-defendants Blanes, Rosario, and Nieves are entitled to the protection of qualified immunity

## CONCLUSION

The Court **approves and adopts** the Magistrate Judge's Report and Recommendation in its entirety. Accordingly, defendants' motions to dismiss are **granted in part and denied in part.**

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION
### PROCEDURAL BACKGROUND

VELEZ–RIVE, United States Magistrate Judge.

On November 3, 2003, plaintiff Orlando Rivera Sánchez filed suit against the Puer-

to Rico Electric Power Authority ("PREPA"), Héctor R. Rosario (PREPA's Executive Director), Isabel Nieves de Sánchez (Interim Supervisor of the Claims and Judicial Investigation Department), and Ana T. Blanes (PREPA's Director of the Human Resources Division) alleging discrimination in violation of Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101; Section 20, Article 11 of the Constitution of the Commonwealth of Puerto Rico; and Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5151 and 5152. (Docket No. 1).

On February 23, 2003, PREPA filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted alleging the Complaint lacked allegations of discriminatory acts or allegations of the nature of disability under the ADA. (Docket No. 3).

On April 8, 2004, PREPA filed an Opposition to the Motion to Dismiss and requested leave to file an Amended Complaint (Docket No. 9). On the same day, the Court granted leave to file the Amended Complaint and struck from the record the Opposition to the Motion to Dismiss because it exceeded the page limit specified by Local Rule 7(e). (Docket No. 10). PREPA was granted until April 23, 2004 to re-file its Opposition to the Motion to Dismiss in accordance with Local Rule 7(e) and PREPA timely filed same in compliance with Local Rule 7(e). (Docket No. 15).

On April 8, 2004, the Amended Complaint was filed alleging discrimination in violation of 42 U.S.C. § 1983, 1985 and 1986; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101; and Section 504 of the Rehabilitation Act of 1973. (Docket No. 11). In addition, supplemental jurisdiction was invoked for this Court to exercise jurisdiction for claims under Law 44 of July 2, 1989, as amended by Law 105 of December 20, 1991 and Law 53 of August 30, 1993; Law of Puerto Rico Annotated 501 et seq. (Puerto Rico Disabilities Law); Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5151 and 5152; and the Employment Discrimination Statute, Act. No. 100 of June 30, 1959, 29 P.R. Laws Ann. Title 29 § 146 et seq.

PREPA's Motion to Dismiss was referred to this Magistrate Judge for report and recommendation (Docket No. 19). On June 7, 2004, a report and recommendation was issued denying PREPA's Motion to Dismiss because a reading of the Amended Complaint satisfied the Court plaintiff had complied with the notice pleading requirements of Fed.R.Civ.P. 8(a)(2). (Docket No. 21).

On the same day, PREPA filed a Motion to Dismiss Amended Complaint. (Docket No. 22). On July 1, 2004, plaintiff filed his Response to the Motion to Dismiss Amended Complaint (Docket No. 29) and on July 13, 2004 PREPA filed its Reply. (Docket No. 33).

On August 2, 2004, co-defendants Rosario, Nieves and Blanes filed a Motion to Dismiss the Amended Complaint and Motion to Join PREPA's Motion to Dismiss the Amended Complaint. (Docket No. 44). Plaintiff requested an extension of time until August 30, 2004 to file his response to this Motion to Dismiss and the same was granted. (Docket Nos. 46 and 47). Nonetheless, to this day, co-defendants Rosario, Nieves and Blanes' Motion to Dismiss remains unopposed.

PREPA's Motion to Dismiss the Amended Complaint and related pleadings were referred to this Magistrate Judge for report and recommendation. (Docket No. 34).

## MOTION TO DISMISS STANDARD

When deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in Plaintiffs' favor. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in Plaintiffs' favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3.

Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim. . . ." *Id.*; see also *Doyle*, 103 F.3d at 190.

In *Rogan v. Menino*, 175 F.3d 75 (1st Cir.1999) the Court held that a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. *Id.* at 77. With this standard in mind, all of the facts alleged in the complaint are accepted as true. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

## ANALYSIS

### A. Timeliness of Plaintiff's Causes of Action under 42 U.S.C. § 1983.

 Section 1983 does not provide its own statute of limitations; as such, when a federal statute does not include a limitations period, courts look to the most analogous state statute of limitations for guidance. *Iravedra v. Public Building Authority*, 283 F.Supp.2d 570, 576–78 (D.P.R.2003); *see Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1997) (citing *Wilson v. Garcia*, 471 U.S. 261, 278–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). The First Circuit has held that for § 1983 claims, the statute of limitations governing personal injury actions is to be applied. In Puerto Rico, the relevant limitations period is one year, based on Article 1868(2) of the Puerto Rico Civil Code, 31 P.R.Laws Ann., §§ 5298(2). The accrual date of a Section 1983 action, however, is determined by federal law. See *Ramos v. Román*, 83 F.Supp.2d 233, 237 (D.P.R.2000); *Torres v. Superintendent of the Police of Puerto Rico*, 893 F.2d 404, 407 (1st Cir.1990). The accrual period "begins when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Torres*, 893 F.2d at 407 (citing *Marrapese v. Rhode Island*, 749 F.2d 934, 936 (1st Cir.1984)).

Defendants argue plaintiff's claims under § 1983 are time-barred because the Complaint was filed more than one year after the last alleged discriminatory act.

Plaintiff argues in his Opposition that five (5) incidents of discrimination occurred. The first four (4) incidents occurred on or around May 11, 2001, August 2001, March 2002 and April 19, 2002. (Docket No. 29, pp. 8–10). The fifth incident happened on February 13, 2003 when Ms. Sylvette López from the PAE (PREPA's program to help the employee)

advised plaintiff that PREPA should approve retirement of plaintiff due to mental impairment and that plaintiff's emotional condition was not work related. (Docket No. 29, pp. 10–11). Plaintiff explains the early retirement was involuntary and it shows a pattern of discrimination against him due to his political affiliation and mental incapacity. (Docket No. 29, pp. 11–12).

■ Defendants argue in their Reply the fifth incident is not an act of discrimination related to the § 1983 political discrimination claims but related only to his ADA claims. Defendants aver Ms. López is not sued in this case and there are no allegations Ms. López is a member of the PPD party nor she knew of plaintiff's political affiliation. (Docket No. 33, pp. 4–5).

Defendants' argument that the fifth incident is not an act of discrimination related to the § 1983 political discrimination claims but related to his ADA is not persuasive. There is no legal basis at the motion to dismiss stage, nor have defendants provided any, to categorically classify the February 13, 2003 alleged act of discrimination as ADA related and not § 1983.

Taking the facts of the Amended Complaint as true, the last discriminatory act occurred on February 13, 2003 when Ms. López advised plaintiff retirement should be approved by PREPA because of a mental impairment due to plaintiff's non-work related emotional condition. (Docket No. 11, ¶ 70). Accordingly, this Magistrate Judge considers February 13, 2003 as the accrual date in the instant case, for according to the Amended Complaint and the Opposition to the Motion to Dismiss, the last discriminatory act occurred on this specific date, when plaintiff was notified of some charges filed against him for alleged illegal appropriation of electrical materials. (Docket No. 11, ¶ 70 and Docket No. 29, pp. 11–12).

Therefore, plaintiff had until February 13, 2004 to file his claim. The record shows the Complaint was filed on November 3, 2003 and entered on the docket on November 5, 2003. (Docket No. 1). Thus, the claim was timely filed and the § 1983 claims against all co-defendants are not time-barred.

In view of the foregoing, it is recommended that the Motion to Dismiss the § 1983 claims against be DENIED.

**B. Entitlement to Qualified Immunity of Co–Defendants Rosario, Nieves and Blanes, in their Individual Capacities, as to the § 1983 claims.**

Co–Defendants Rosario, Nieves and Blanes claim they are entitled to qualified immunity in their individual capacities as to the § 1983 claims against them. In essence, co-defendants argue plaintiff has failed to allege in the Amended Complaint any constitutional violation by co-defendants Rosario and Blanes. They claim plaintiff has failed to specify the specific conduct of co-defendants Rosario and Blanes which violated plaintiff's constitutional rights of which a reasonable official would have knowledge violated a constitutional right. As to co-defendant Nieves, it is alleged that the only claim made against her is plaintiff's transfer to the maintenance area in Monacillos Center (Docket No. 11, ¶ 26) and this claim is time-barred. As such, the individual co-defendants contend they are entitled to qualified immunity. (Docket No. 44, pp. 3–4). Plaintiff has failed to rebut the qualified immunity raised by the individual co-defendants. This Magistrate Judge does not concur with co-defendants' assessment, at this time.

"Government officials performing discretionary functions generally are shielded from liability for civil damages [under

§ 1983] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). ."Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." *Santana v. Calderón,* 342 F.3d 18, 23 (1st Cir.2003) (quoting *Ryder v. United States,* 515 U.S. 177, 185, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)).

Based on Supreme Court precedent, the First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: (1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue. *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir. 2004).

▆▆▆ The request for immunity must be rejected if there is no issue as to the existence of a particular statutory or constitutional right which a reasonable public official should be aware of. The qualified immunity inquiry must start with the court ascertaining whether or not plaintiff has pled sufficient facts to denote violation of a constitutional right. *Santana,* 342 F.3d at 23; *Concepción v. Zorrilla,* 309 F.Supp.2d 201, 213 (D.P.R.2004).

▆▆▆ Our initial inquiry in this case is to determine whether plaintiff's particular job was shielded from political bias or whether, on the other hand, he held a "policymaking position" or a "position of unusual confidence" which do allow for political affiliation as an appropriate consideration when making personnel-related decisions. *See, Gómez v. Rivera Rodrí-*

*guez,* 344 F.3d 103, 110 (1st Cir.2003); *Padilla–García v. Guillermo Rodríguez,* 212 F.3d 69, 74 (1st Cir.2000). "Public employees who do not hold confidential policy-making positions are protected from adverse employment actions based on political affiliation." *Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 7 (1st Cir. 2000). *See, Duriex–Gauthier v. López–Nieves,* 274 F.3d 4, 11 (1st Cir.2001) ("position is one in which political affiliation is a reasonably necessary requirement").

No claim has been made in this case that plaintiff held a policymaking position prior to his transfer nor one that would demand confidentiality. Accordingly, we conclude plaintiff's political views could not be considered in the transfer determination.

The protection against political patronage practices resulting in dismissals initially validated in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), was subsequently extended to also cover promotions, transfers, recalls or hiring decisions in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). *Rutan* specifically ruled that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." 497 U.S. at 75, 110 S.Ct. 2729, 111 L.Ed.2d 52.

▆▆▆ In this case, it is specifically alleged that the individual co-defendants were able to understand that the alleged persecution, harassment and discrimination violated clearly established constitutional rights. The conduct complained of is, inter alia, performed by members of the PPD and involved treating plaintiff differently than similarly situated employees for being affiliated with the NPP with the

intent to injure plaintiff's constitutional rights. A reasonable official in circumstances similar to those alleged should have known such conduct violated clearly established constitutional rights guaranteed by the Due Process and Equal Protection Clauses of the Constitution. Furthermore, at this time, the Court is not in a position in which it can examine possible evidence that could be presented by means of a summary judgement motion, or even during trial, that would help to controvert the allegations made by plaintiff.

Therefore, accepting as true all the factual allegations presented by plaintiff in the Amended Complaint, and construing a reasonable inference in favor of plaintiff that these individuals should have known the illegality of the alleged actions, it is recommended that co-defendants' Motion to Dismiss the Amended Complaint on the grounds they enjoy qualified immunity be DENIED at this time.

## C. Plaintiff's Failure to State a Claim under 42 U.S.C. §§ 1985 and 1986.

Defendants claim plaintiff has failed to state a claim under 42 U.S.C.A. §§ 1985 and 1986 because he has not alleged there was a conspiracy between defendants nor did he claim the purpose of the conspiracy was to deprive him of equal protection, privilege and immunities.

Section 1985 has three (3) subsections, each of which sets forth a distinct cause of action. The first two subsections are plainly inapplicable: § 1985(1) protects federal officers from those conspiring to prevent (by force, intimidation, or threat) the officer from discharging his or her duties; and § 1985(2) protects parties and witnesses in federal court from conspiracies to deter them from appearing or testifying. Section 1985(3) is broader in its reach and prohibits, in general terms, conspiracies to violate civil rights.[1] Therefore, we conclude plaintiff asserts his claim under §§ 1985(3) and 1986.

Section 1986 extends liability to persons who knowingly fail to prevent conspiracies under § 1985. 42 U.S.C.A. §§ 1985 and 1986.

Section 1985(3) proscribes certain enumerated conspiracies.[2] To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). See *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

In *Griffin*, the Supreme Court placed a gloss on these four elements, effectively adding a fifth requirement. It construed the statute's references to "equal protection" and "equal privileges and immunities under the laws" to signify a plaintiff may

---

1. In pertinent part, § 1985(3) reads: If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

2. The statute confers a private right of action for injuries occasioned when "two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3).

recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.*

Subsequently, in *United Bhd. of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court narrowed the scope of § 1985(3) by specifically excluding "conspiracies motivated by economic or commercial animus". The Court, however, declined to rule on whether its protection extended to "any class or organization on account of its political views or activities". *Id.* at 838, 103 S.Ct. 3352; *see Concepción*, 309 F.Supp.2d at 214.

In this case plaintiff alleges defendants' conduct was motivated by his political affiliation. The debate of whether membership in a political party, absent racial bias, falls within the scope of a § 1985(3) protected class subsequent to *Scott* still continues with some courts ruling in its favor[3] and others against it.[4]

The First Circuit Court of Appeals has not yet issued an opinion on this matter. However, this Court recently ruled in *Concepción*, 309 F.Supp.2d at 214 against extending the scope of § 1985(3) to conspiracies based exclusively on political discriminatory animus. This Court followed previous decisions in this particular district which have ruled against extending the scope of § 1985(3) to conspiracies based exclusively on political discriminatory animus. See, *Torres Ocasio v. Meléndez*, 283 F.Supp.2d 505, 518 (D.P.R.2003); *Reyes v. Municipality of Guaynabo*, 59

F.Supp.2d 305, 310 (D.P.R.1999); *Morales–Narváez v. Rosselló*, 852 F.Supp. 104, 114–5 (D.P.R.1994); *Rodríguez v. Nazario*, 719 F.Supp. 52, 55–6 (D.P.R.1989).

■ A reading of the instant Amended Complaint shows plaintiff's claims of violations of §§ 1985 and 1986 are exclusively based on a political discriminatory animus. (Docket No. 11, ¶ 2, 91 and 95(1)). Accordingly, it is recommended that the Motion to Dismiss the §§ 1985 and 1986 claims be GRANTED and this cause of action be DISMISSED WITH PREJUDICE as to PREPA and as to the individual co-defendants Rosario, Nieves and Blanes

## D. Plaintiff's ADA and Rehabilitation Act Claims against PREPA.

### i. Applicable Law.

■ The ADA prohibits discrimination against an otherwise qualified individual based on his or her disability. 42 U.S.C. Sec. 12112(a); *See also, Katz v. City Metal Co., Inc.*, 87 F.3d 26, 30 (1st Cir.1996). The federal statutes barring discrimination based on disability do more than merely prohibit disparate treatment; they also impose an affirmative duty on employers to offer a "reasonable accommodation" to a disabled employee. 42 U.S.C. § 12112(b)(5)(A). *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 n. 9 (1st Cir.2000).

In order to establish a claim of disability discrimination under the ADA, in the absence of direct evidence of discrimination,

---

3. Political association is a protected class. *Gleason v. McBride*, 869 F.2d 688, 695 (2nd Cir.1989); *Conklin v. Lovely*, 834 F.2d 543, 549–50 (6th Cir.1987); *Dohner v. Neff*, 240 F.Supp.2d 692, 705 (N.D.Ohio 2002); *Larkin v. Town of West Hartford*, 891 F.Supp. 719, 731 (D.Conn.1995).

4. Political association is not a protected class. *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985); *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir.1985); *Harrison v. KVAT Food Mgt. Inc.*, 766 F.2d 155 (4th Cir.1985); *D'Aurizio v. Palisades, Park*, 963 F.Supp. 387, 393 (D.N.J.1997).

a plaintiff must rely on circumstantial evidence and establish a *prima facie* case through the burden shifting method developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5]

Under the *McDonnell Douglas* framework, a plaintiff must first prove by a preponderance of the evidence that he or she (i) is a "qualified individual" with a disability within the meaning of the Act; (ii) is able to perform the essential functions of the job, with or without a reasonable accommodation; (iii) was subject to an adverse employment action by an employer who is subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result. *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir.2002)(*citing Lessard v. Osram Sylvania, Inc.*, 175 F.3d 193, 197 (1st Cir.1999)); *Calero–Cerezo v. U.S. Department of Justice*, 355 F.3d 6, 19 (1st Cir.2004).[6]

Such a showing gives rise to an inference the employer discriminated due to the plaintiff's disability and places upon the employer the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 153 (1st Cir.1990). This entails only a burden of production, and not a burden of persuasion. The burden of proving discrimination remains with the plaintiff at all times. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See also Dichner v. Liberty Travel*, 141 F.3d

24, 29–30 (1st Cir.1998) (holding that the employer's burden is one only of production, inasmuch as the burden of proving an improper motive always remains with the plaintiff). Once the employer has satisfied said requirement, the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is pretextual and that the adverse employment action resulted from the employer's discriminatory animus. *Bishop v. Bell Atlantic Corp.*, 299 F.3d 53 (1st Cir.2002); *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996) (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

The first prong of the *prima facie* case requires plaintiff to bring forth enough evidence from which a reasonable jury could conclude he or she is disabled within the meaning of the Act. It has been held that "'disability' is a term of art in the ADA context." *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 21 (1st Cir.2002).

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8).

In turn, the ADA defines "disability" as either: (a) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

---

**5.** *See also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir.1999); *Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1st Cir.1998); *Cruz v. McAllister Bros., Inc.*, 52 F.Supp.2d 269, 278–79 (D.Puerto Rico 1999).

**6.** *See also Katz*, 87 F.3d at pg. 30; *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir.1996). *See also Dichner v. Liberty Travel*, 141 F.3d 24, 30 (1st Cir.1998); *Acevedo López v. Police Dept. of Com. of Puerto Rico*, 81 F.Supp.2d 293 (D.Puerto Rico 1999).

■ In addition, the following factors are considered to determine whether or not a major life activity is substantially limited: the nature and severity of the impairment, the length of time which the impairment is expected to continue, and whether or not the impairment can be characterized as a long-term condition. See 29 C.F.R. § 1630.2(j)(2); see also, *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 31 (1st Cir.1996); *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462 (4th Cir.2002).

■ The same standards apply to claims under the ADA and under the Rehabilitation Act. *Calero–Cerezo*, 355 F.3d at 12; *Oliveras–Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 25 n. 2 (1st Cir. 2000).

### ii. Analysis.

PREPA and the individual co-defendants allege plaintiff's Amended Complaint falls short of the pleading standards of the ADA and plaintiff has failed to properly state an ADA claim because the complaint contains no allegations of the nature of the disability and the reasonable accommodations demanded by the disability. PREPA and the individual co-defendants claim plaintiff has failed to indicate the major life activity he is unable to perform due to his disability. Furthermore, they contend plaintiff has failed to ascertain in the Amended Complaint he meets the ADA's definition of disability for him to be considered a qualified individual as required by the Act.

A perusal of the Amended Complaint demonstrates plaintiff alleges defendants have discriminated against him due to his mental incapacity or disability in violation of the ADA and the Rehabilitation Act of 1973. Plaintiff contends in the Amended Complaint he suffers from high blood pressure and severe depression related to problems at work which required multiple hospitalizations and periods of rest. (Docket No. 11, ¶¶ 43–77). Plaintiff maintains that, even though defendants knew of his physical and mental condition, they took no prompt and corrective action in this respect. (Docket No. 11, ¶ 54). Plaintiff alleges defendants were responsible for creating the physical and mental impairments and also failed to accommodate him even though he requested the accommodation allowing his condition to get worse. (Docket No. 11, ¶ 78). Plaintiff also claims that "[a]t all times relevant to this complaint ... [he] has been an individual with a 'disability within the meaning of section 3 of the ADA, 42 U.S.C. § 12102.' He has a physical and mental impairment that substantially limits one or more of his major life activities, has a record of such impairments, and is regarded as being an individual as having such impairments." (Docket No. 11, ¶ 96). Finally, plaintiff avers that "[a]t all times relevant to this complaint ... [he] was a 'qualified individual with a disability' as that term is defined in section 101 of the ADA, 42 U.S.C. § 12111(8), because he was qualified to do his job and in fact has did [sic] it even though defendants have denied him the reasonable accommodation which he needed and deserved." (Docket No. 11, ¶ 97).

Furthermore, pursuant to the Amended Complaint, plaintiff suffers from a permanent impairment as advised to him on February 13, 2003 by Ms. Sylvette López that PREPA should approve his retirement due to a **permanent** mental impairment due to plaintiff's non-related condition. (Docket No. 11, ¶ 70).

Plaintiff argues in his Opposition to the Motion to Dismiss he meets the requirements of an individual with disabilities inasmuch he suffers a mental impairment which substantially limits one or more major life activities. Plaintiff avers the First Circuit has recognized depression as a

mental impairment that may constitute, at least in some circumstances, a disability under federal law. (Docket No. 29, p. 31). *See Calero–Cerezo,* 355 F.3d at 20; *Criado v. IBM Corp.,* 145 F.3d 437, 442 (1st Cir. 1998).[7] Plaintiff contends he has been hospitalized on multiple occasions and his condition "substantially limits" his major life activities because among the symptoms of clinical depression are problems sleeping, eating, concentrating, working, interacting with others, lack of motivation, among others. (Docket No. 29, p. 32). Furthermore, plaintiff maintains that, before the facts alleged in the Amended Complaint, he was able to do his job with excellent evaluations. Nonetheless, after the alleged acts of discrimination, plaintiff claims defendants failed to give him reasonable accommodation and made him retire early. Plaintiff asserts that with reasonable accommodation and without being discriminated, he could have performed the duties of his position. (Docket No. 29, pp. 32–34). Finally, plaintiff avers he also suffers from high blood pressure and an infection of the respiratory track. (Docket No. 29, p. 34).

As indicated in our prior Report and Recommendation, in *Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61 (1ST Cir.2004), the First Circuit did away with the heightened pleading standard for civil right cases following the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The First Circuit stated as follows:

The handwriting is on the wall. *Swierkiewicz* has sounded the death knell for the imposition of a heightened pleading standard except in civil cases in which either a federal statute or a specific Civil Rule requires that result. In all other cases, courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply notice pleading requirements of Rule 8(a)(2). *Educadores,* 367 F.3d at 66.

Accordingly, a Complaint need only include "a short plain statement of the claim showing the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This applies to cases under the ADA. *See Gorski v. New Hampshire Dept. of Corr.,* 290 F.3d 466 (1st Cir.2002) ("The Supreme Court has recently confirmed that complaints alleging employment discrimination need only satisfy "the simple requirements of Rule 8(a)."); *Briggs v. New York State Dept. of Transp.,* 233 F.Supp.2d 367, 372 (N.D.N.Y.2002).

Thus, taking the facts of the Amended Complaint as true, and the accompanying facts as outlined in plaintiff's Opposition, they are enough to state a claim for relief under Fed.R.Civ.P. 8(a)(2) and to meet the *prima facie* case for disability discrimination.

In the instant case, plaintiff has provided sufficient allegations to establish, at this stage of the proceedings, that he is

---

7. A number of other circuits have also recognized depression as a qualifying mental impairment. *See, e.g., Ogborn v. United Food & Commercial Workers Union, Local No. 881,* 305 F.3d 763, 767 (7th Cir.2002) ("Major depression can constitute a disability under the ADA."); *Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1088 n. 8 (9th Cir.2001) ("In Oregon, stress and depression can be considered mental impairments. The same is true under the ADA."); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996) ("Depression has been held to constitute a mental impairment."); *Doe v. Region 13 Mental Health–Mental Retardation Comm'n.,* 704 F.2d 1402, 1408 (5th Cir.1983) (same).

disabled within the meaning of the Act. As mentioned above in detail, plaintiff suffers from a major severe depression with psychotic traces which is documented by the treatment he has received including several hospitalizations. The depression is permanent in nature and limits some aspects of his major life activities, such as, sleeping, eating, concentrating, working, interacting with others, lack of motivation, among others. In addition, plaintiff was unable to work or perform his duties with or without reasonable accommodation. Moreover, plaintiff requested reasonable accommodation and it was denied. Finally, plaintiff was forced to retire, which could constitute an adverse employment action.

Accordingly, it is recommended that co-defendants Motion to Dismiss the ADA and Rehabilitation Act claims against PREPA be DENIED.

### E. Plaintiff's ADA Claims against the Individual Defendants.

Co-defendants Rosario, Nieves and Blanes argue the claims against them must be dismissed because they cannot be held individually liable under the ADA.[8] (Docket No. 44). Plaintiff has failed to oppose this argument.

Determining the meaning of the term "employer" is essential because Title VII is directed at "employers." Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day and any agent of such person." 42 U.S.C. § 2000–e. Therefore, because of "individual capacity", co-defendants Rosario, Nieves and Blanes are not the employ-

ing entity, and it should be determined whether they can be held liable as an agent of the employing entity. *Rivera Rodríguez v. Police Dept. of Puerto Rico,* 968 F.Supp. 783, 785 (D.Puerto Rico 1997); *Anonymous v. Legal Services Corporation of Puerto Rico,* 932 F.Supp. at 50 (D.Puerto Rico 1996) (stating that "resolution of the [individual liability] question depends on how the 'and any agent' language is interpreted.").

This Court has previously addressed the issue of individual liability under the ADA, ADEA and Title VII and held that "[t]he First Circuit Court of Appeals and the Supreme Court have yet to decide this issue of individual liability of supervisors". *See e.g. Serapión v. Martínez,* 119 F.3d 982, 992 (1st Cir.1997) (circuit has not resolved issue and declined to address); *Salamo Martínez v. Celulares Telefónica, Inc.,* 272 F.Supp.2d 144, 153 (D.Puerto Rico 2003) (same); *Orell v. UMass Mem'l Med. Ctr. Inc.,* 203 F.Supp.2d 52, 64 (D.Mass.2002) (same); *Flamand v. American International Group, Inc.,* 876 F.Supp. 356, 363 (D.Puerto Rico 1994) (same); *see also Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931, 951–952 (1st Cir. 1995) (similar). More so, in a recent case there is a limited pronouncement on this issue, which seems to outline the path that may be soon followed. *See Vélez v. Awning Windows, Inc.,* 375 F.3d 35, 42 n. 5 (1st Cir.2004), indicating the law does not provide for supervisory liability under Title VII may be true, but the state statute still imposes liability on supervisors for acts of sexual harassment. *See Mejías Miranda v. BBII Acquis'n Corp.,* 120 F.Supp.2d 157 (D.Puerto Rico 2000) (no

---

**8.** It is clear from the content of the Amended Complaint that co-defendant Blanes is being sued both in her personal and official capacity. (Docket No. 11, ¶ 18). Nonetheless, this is not clear as to co-defendants Rosario and Nieves. As such, in an abundance of caution, we will assume for purposes of this report and recommendation that co-defendants Rosario and Nieves are also being sued in their personal and official capacities.

personal liability can attach to agents and supervisors under Title VII or the ADEA).

This district has followed the majority of circuits that have confronted this issue holding that no personal liability can attach to agents and supervisors under Title VII, ADA, ADEA or COBRA. *See Orell,* 203 F.Supp.2d at 64 (citing *Vizcarrondo v. Board of Trustees of the UPR,* 139 F.Supp.2d 198, 202 (D.Puerto Rico 2001); *Julia v. Janssen, Inc.,* 92 F.Supp.2d 25, 28–29 (D.Puerto Rico 2000)) (citing *Díaz v. Antilles Conversion & Export, Inc.,* 62 F.Supp.2d 463, 465 (D.Puerto Rico 1999) (ADEA)). See *Vicenty Martell v. Estado Libre Asociado de P.R.,* 48 F.Supp.2d 81, 87 (D.Puerto Rico 1999) (ADA and ADEA); *Sifre v. Department of Health,* 38 F.Supp.2d 91, 105–106 (D.Puerto Rico 1999) (ADA and Rehabilitation Act); *Figueroa v. Fajardo,* 1 F.Supp.2d 117, 120 (D.Puerto Rico 1998) (ADA); *Rivera Rodriguez v. Police Dep't of P.R.,* 968 F.Supp. 783, 785–786 (D.Puerto Rico 1997) (ADA); *Moreno v. John Crane, Inc.,* 963 F.Supp. 72, 76 (D.Puerto Rico 1997) (ADA); *Figueroa v. Mateco, Inc.,* 939 F.Supp. 106, 107 (D.Puerto Rico 1996) (ADEA); *Hernández v. Wangen,* 938 F.Supp. 1052, 1063–65 (D.Puerto Rico 1996) (Title VII); *Anonymous v. Legal Serv. Corp.,* 932 F.Supp. 49, 50–51 (D.Puerto Rico 1996)(ADA); *Flamand,* 876 F.Supp. at 361–64 (ADEA); *see also Meara v. Bennett,* 27 F.Supp.2d 288, 290 (D.Mass.1998) (ADA); *Miller v. CBC Companies, Inc.,* 908 F.Supp. 1054, 1065 (D.N.H.1995) (ADA); *McDowell v. Krawchison,* 125 F.3d 954 (6th Cir.1997) (sole shareholder of chiropractic clinic could be considered as "employer" under ERISA due to his actions regarding clinic's health insurance plan did not justify imposition of individual liability for failing to provide terminated employee's spouse with notice required by COBRA); *see generally Montez v. Romer,* 32 F.Supp.2d 1235, 1241 (D.Colo.1999) (Rehabilitation Act).

▮ Therefore, it is recommended that the Motion to Dismiss the ADA claims against the individual co-defendants be GRANTED for lack of individual liability and this cause of action be DISMISSED WITH PREJUDICE as to co-defendants Rosario, Nieves and Blanes.

## F. Plaintiff's FMLA Claims.

Defendants request in one sentence on their Motion to Dismiss and without any argument that the Family and Medical Leave Act ("FMLA") claims, 29 U.S.C. § 2611(4), be dismissed on the same grounds as the ADA claims. (Docket No. 22, p. 13). A review of the Amended Complaint shows no claims have been made by plaintiff under the FMLA. Accordingly, there is no need for us to discuss the request for dismissal of the FMLA claims.

## G. Pendent Jurisdiction.

▮ PREPA and co-defendants Rosario, Nieves and Blanes request that, upon the dismissal of plaintiff's federal claims, any supplemental claims under state law [9] should be dismissed.

▮ Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case.

---

9. Plaintiff contends defendants' actions violated Law 44 of July 2, 1989, as amended by Law 105 of December 20, 1991 and Law 53 of August 30, 1993; Law of Puerto Rico Annotated 501 et seq. (Puerto Rico Disabilities Law); Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5151 and 5152; and the Employment Discrimination Statute, Act. No. 100 of June 30, 1959, 29 P.R. Laws Ann. Title 29 § 146 et seq.

The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Confederación Laborista De Puerto Rico v. Cervecería India, Inc.,* 607 F.Supp. 1077, 1081 (D.Puerto Rico 1985).[10]

■ In *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See Martínez v. Colón,* 54 F.3d 980, 990 (1st Cir.1995).

■ The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." *Rodríguez v. Doral Mortage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995); *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 257 (1st Cir.1996).

■ The exercise of pendent jurisdiction is discretionary. In view of the foregoing, federal claims against PREPA, Blanes, Rosario and Nieves survive the motion to dismiss. Thus, upon an assessment of judicial economy and fairness to litigants, the Court should exercise pendent jurisdiction as to plaintiff's Commonwealth claims against PREPA, Rosario, Nieves and Blanes.

## CONCLUSION

It is recommended that the Motion to Dismiss of PREPA and the individual co-defendants be GRANTED in part and DENIED in part.

In sum, it is recommended to the Court as follows:

— Motion to Dismiss for failure to state a claim under 42 U.S.C.A. § 1983 be DENIED.

— Co-defendants Blanes, Rosario and Nieves' Motion to Dismiss on grounds they enjoy qualified immunity as to the § 1983 claims be DENIED at this time.

— Motion to Dismiss for failure to state a claim under 42 U.S.C.A. §§ 1985 and 1986 be GRANTED and this cause of action be DISMISSED WITH PREJUDICE as to PREPA and as to the individual co-defendants Rosario Nieves and Blanes.

— Motion to Dismiss the ADA and the Rehabilitation Act claims against PREPA be DENIED.

— Motion to Dismiss the ADA claims against the individual co-defendants be GRANTED for lack of individual liability and this cause of action be DISMISSED WITH PREJUDICE as to co-defendants Rosario, Nieves and Blanes.

---

10. *See Ponce Federal Bank v. The Vessel "Lady Abby",* 980 F.2d 56 (1st Cir.1992) (Nonfederal claim against a person not otherwise a party in a case is sufficiently related to an admiralty claim to permit assertion of pendent party jurisdiction if state law claim against additional party arises out of common nucleus of operative facts with admiralty claim and resolution of factually connected claims in single proceeding would further interests of conserving judicial resources and fairness to parties).

— Exercise pendent jurisdiction as to plaintiff's claims under state law against PREPA, Blanes, Rosario and Nieves.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

Sept. 21, 2004.